Liza M. Walsh
Selina M. Ellis
Walsh Pizzi O'Reilly Falanga LLP
One Riverfront Plaza
1037 Raymond Boulevard, 6th Floor
Newark, NJ 07102
Tel: (973) 757-1100
lwalsh@thewalshfirm.com
sellis@thewalshfirm.com

Nicholas J. Pappas
Jeffrey S. Klein (admitted *pro hac vice*)
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
nicholas.pappas@weil.com
jeffrey.klein@weil.com

Diane P. Sullivan
Allison M. Brown
Weil Gotshal & Manges LLP
17 Hulfish Street #201
Princeton, New Jersey 08542
Tel: (609) 986-1120
diane.sullivan@weil.com
allison.brown@weil.com
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHUBB INA HOLDINGS INC.** **(f/k/a THE CHUBB CORPORATION)** **and FEDERAL INSURANCE COMPANY,** | Civil Action No. 3:16-cv-02354 |
| Plaintiffs, | |
| v. | |
| **MICHAEL CHANG, BENTLEY BETTS, AND ENDURANCE SERVICES LTD.,** | **REDACTED** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

    I.    ENDURANCE CREATES A NEW REAL ESTATE INSURANCE
        BUSINESS FOR THE PURPOSE OF SOLICITING CHUBB'S
        CLIENTS, AND STAFFS IT WITH AN EXISTING GROUP OF
        CHUBB EXECUTIVES ....................................................................... 3

    II.    CHANG SOLICITS CHUBB'S CLIENTS AND BROKERS IN
        VIOLATION OF HIS AGREEMENTS ................................................. 4

    III.    DEFENDANTS AND THE CHANG GROUP MISAPPROPRIATE
        CONFIDENTIAL INFORMATION AS PART OF THEIR SCHEME TO
        UNFAIRLY COMPETE WITH CHUBB ............................................. 7

ARGUMENT ................................................................................. 8

    I.    CHUBB IS ENTITLED TO A PRELIMINARY INJUNCTION
        ENJOINING DEFENDANTS FROM CONTINUING THEIR
        MISDEEDS ................................................................................. 8

        A.    Chubb Has Demonstrated A Reasonable Probability of Success On
               The Merits Of Its Claims ........................................................ 8

        B.    Chubb Suffered and Will Suffer Irreparable Harm Absent
               Injunctive Relief .................................................................. 16

        C.    The Balance of Hardships Tilts Decidedly Toward Chubb ..................... 18

        D.    The Public Interest Favors Granting Injunctive Relief ........................... 20

CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*,
 No. 08-4369, 2008 WL 4630486 (D.N.J. Oct. 17, 2008) ..................................................20, 21

*ADP, LLC v. Jacobs*,
 No. 2:15-3710, 2015 WL 4670805 (D.N.J. Aug. 5, 2015) ................................8, 12, 16, 17, 21

*Am. Fin. Res., Inc. v. Money Source, Inc.*,
 No. 14-1651, 2014 WL 1705617 (D.N.J. Apr. 29, 2014).................................................12, 13

*BigStar Entm't Inc. v. Next Big Star, Inc.*,
 105 F. Supp. 2d 185 (S.D.N.Y 2000).......................................................................................9

*Chemetall US Inc. v. Donald Laflamme and Coral Chemical Co.*,
 No. CIV.A. 16-780, 2016 WL 885309 (D.N.J. Mar. 8, 2016)................................9, 10, 11, 20

*The Community Hosp. Group, Inc. v. More*,
 183 N.J. 36 (2005) ..................................................................................................................20

*Domanske v. Rapid-Am. Corp.*,
 330 N.J. Super. 241, 749 A.2d 399 (N.J. App. Div. 2000).................................................10, 11

*Fisher Bioservices, Inc. v. Bilcare, Inc.*,
 No. 06-567, 2006 U.S. Dist. LEXIS 34841 (E.D. Pa. May 31, 2006)...............................12, 13

*Frederico v. Home Depot*,
 507 F.3d 188 (3d Cir. 2007)....................................................................................................10

*Howmedica Osteonics v. Zimmer Inc.*,
 461 F. App'x 192 (3d Cir. 2012) ........................................................................................14, 15

*HR Staffing Consultants LLC v. Butts*,
 627 F. App'x 168 (3d Cir. 2015) ........................................................................................19, 20

*Ikon v. Usherwood Off. Tech., Inc.*,
 No. 9202–08, 2008 WL 5206291 (Sup. Ct. Albany Cnty, Dec. 12, 2008).............................19

*Ingersoll-Rand v. Ciavatta*,
 110 N.J. 609 (1988) ................................................................................................................11

*J.H. Goldberg Co., Inc. v. Stern*,
 53 A.D.2d 246 (N.Y. App. Div. 4th Dept. 1976)....................................................................18

*Kos Pharms., Inc. v. Andrx Corp.*,
   369 F.3d 700 (3d Cir. 2004).................................................................8, 16

*Lamorte Burns & Co., v. Walters*,
   167 N.J. 285 (2001) ............................................................................14, 16

*Nat'l Reprographics, Inc. v. Strom*,
   621 F. Supp. 2d 204 (D.N.J. 2009) ...................................... *passim*

*NextGen Healthcare Info. Sys., Inc. v. Messier*,
   No. 05-cv-5230, 2005 WL 3021095 (E.D. Pa. Nov. 10, 2005) ................17

*Oburn v. Shapp*,
   521 F.2d 142 (3d Cir. 1975)..................................................................8

*Opticians Ass'n of Am. v. Independent Opticians of Am.*,
   920 F.2d 187 (3d Cir. 1990)............................................................18, 19

*Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*,
   143 F.3d 800 (3d Cir. 1998)................................................................8, 16

*Phillip Morris, Inc. v. Pittsburgh Penguins Inc.*,
   589 F. Supp. 912 (W.D. Pa. 1983)..........................................................17

*Printing Mart Morristown v. Sharp Electronics Corp.*,
   116 N.J. 739 (1989) .............................................................................14

*Quaker Chem. Corp. v. Varga*,
   509 F. Supp. 2d 469 (E.D. Pa. 2007) ....................................................20

*Rochester Midland Corp. v. Enerco Corp.*,
   No. 1:08-cv-98, 2009 U.S. Dist. LEXIS 46103 (W.D. Mich. June 1, 2009)..........16

*Scholastic Funding, LLC v. Kimble*,
   No. 07-557 (JLL), 2007 WL 1231795 (April 24, 2007).........................10

*Schuhalter v. Salerno*,
   279 N.J. Super. 504 (App. Div. 1995) .................................................12

*Tillery v. Hayman*,
   No. CIV.A. 07-2662, 2008 WL 5416392 (D.N.J. Dec. 22, 2008) ............8

*Victaulic v. Tieman*,
   499 F.3d 227 (3d Cir. 2007)..................................................................20

*Whitmyer Bros., Inc. v. Doyle*,
   58 N.J. 25 (1971) ................................................................................11

*Wright Med. Tech., Inc. v. Somers*,
   37 F. Supp. 2d 673 (D.N.J. 1999) ...........................................................................20

*Zambelli Fireworks Mfg. Co. v. Wood*,
   592 F.3d 412 (3d Cir. 2010)...................................................................................11

**Statutes**

Fed. R. Civ. P  65 ...........................................................................................................8

Plaintiffs Chubb INA Holdings, Inc. and Federal Insurance Company (collectively "Plaintiffs" or "Chubb") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction against Defendants Michael Chang ("Chang") and Endurance Services Ltd. ("Endurance").

## PRELIMINARY STATEMENT

This litigation initially began when Defendants planned and executed a scheme to raid Chubb's Real Estate and Hospitality Division ("Real Estate Division"), implementing an *en masse* "lift out" of an existing group of highly compensated Chubb executives. After Chubb filed this lawsuit, and following the involvement of Magistrate Judge Arpert of this Court, Defendants agreed to cease further solicitation of Chubb's employees. However, undaunted, Defendants' wrongful conduct has not abated. Rather, Defendants now openly solicit Chubb's customers through brokers that have longstanding relationships with Chubb. This is a direct violation of the former employees' post-employment restrictive covenants, which expressly preclude the solicitation of Chubb's clients, directly or through brokers. Accordingly, Plaintiffs have filed the present motion to enjoin Chang's continued efforts to improperly solicit business from Chubb's clients and brokers, and Endurance's knowing participation in Chang's solicitation efforts.

On February 22, 2016, Endurance hired the former President of Chubb's Real Estate Division, Michael Chang, knowing that Chang was a party to agreements with Chubb providing that he cannot "[d]irectly or indirectly, solicit or accept business on behalf of a Competitive Business from any Customer." These agreements specifically define "Customer" as "a person or entity to which the Corporation [i.e., Chubb] or any of the Subsidiaries is at the time providing services," including "any broker, agent, or other third party acting for or on behalf of such broker or agent." Chang received equity compensation valued ███████████████ as consideration

for his agreement to the covenants, and he also agreed that Chubb shall be entitled to an injunction and other equitable relief restraining him from violating them.

Chubb commenced this action on April 26, 2016, promptly after Endurance's simultaneous hiring of 40% of the management of Chubb's Real Estate Division on April 22, 2016 (the "Chang Group"). The Chang Group now comprises seventy percent (70%) of Endurance's newly-formed real estate division under Chang's leadership. All but three of the most junior employees in the Chang Group are parties to non-solicitation covenants identical to Chang's.

In direct violation of his anti-solicitation covenant, Chang has repeatedly met with insurance brokers with whom he had previously dealt at Chubb. For example:

- On June 21, 2016, Chang and other members of the Chang Group met with broker ████ ████████ on behalf of Endurance, shortly after which Chubb learned that Endurance had submitted a bid to ████ for the insurance needs of Chubb's client, ████████ and Endurance then succeeded in taking ████████ business from Chubb;

- In or about the week of June 16, 2016, Endurance solicited insurance broker ████████ ████████ in circumstances strongly suggesting that Chang and members of the Chang Group used their knowledge and experience regarding Chubb's customer ████████, an account with more than ████████ in annual premium;

- On May 5, 2016, Chang participated in a meeting with two Chubb clients, ████████ ████████ and ████████████, at the offices of broker ████████████; and

- Between April 10 and April 13, 2016, Chang met representatives from brokers ████ ████ and ████ and customer ████████

There is no innocent explanation for Chang's meetings with Chubb customers and brokers. Defendant Chang's clear objective in participating in these meetings is to solicit business for Endurance in direct competition with Chubb, and thus in violation of his non-solicitation covenants. Given that Chang holds these meetings openly and notoriously, there is a high likelihood that he will continue to meet with Chubb customers and brokers unless enjoined

by the Court.  Endurance knowingly participates with and encourages Chang in these endeavors and therefore tortiously interferes with Chubb's contractual and business relations and prospective economic advantage and competes unfairly with Chubb.

Chubb now seeks preliminary injunctive relief against Chang to prevent him from continuing to violate his clear and unambiguous agreements through solicitation of Chubb's customers and brokers.  Chubb similarly seeks preliminary injunctive relief against Endurance to prevent it from tortious interference with Chubb's contractual and prospective business relations and unfair competition.  Unless Defendants are enjoined by this Court, there is a high likelihood that Defendants will commit further violations of their contractual and legal obligations to Chubb, use and disclose Chubb's confidential information and harm Chubb's goodwill with its customers and brokers, in which Chubb has invested significant time and resources.  A preliminary injunction will return the parties to the status quo ante, protect Chubb's legitimate interests, and leave Chang and Endurance free to compete lawfully and fairly within the bounds of Chang's agreements.

## FACTUAL BACKGROUND

I.    **ENDURANCE CREATES A NEW REAL ESTATE INSURANCE BUSINESS FOR THE PURPOSE OF SOLICITING CHUBB'S CLIENTS, AND STAFFS IT WITH AN EXISTING GROUP OF CHUBB EXECUTIVES**

Chubb is a leading provider of commercial and personal property and casualty insurance, personal accident and supplemental health insurance, reinsurance and life insurance.  *See* Declaration of Nicholas J. Pappas, dated July 5, 2016 ("Pappas Decl.") Ex. 1; Plfs.' Am. Compl. at ¶ 19.  Endurance is a competitor of Chubb in the business of property and casualty insurance. *See* Pappas Decl. Ex. 2.  Seeking to instantly launch a new line of business in which it previously had little or no activity, on February 9, 2016, Endurance announced the hiring of Michael Chang, the president of Chubb's Real Estate Division, who had worked at Chubb for 19 years and was

primarily responsible for managing a team that serviced the major accounts of that division. Pappas Decl. Ex. 3; Plfs' Am. Compl. at ¶¶ 2, 4, 28, 49, 56.  Commencing before this announcement and continuing in the weeks thereafter, Endurance used Chang's intimate knowledge of Chubb's organization to target and solicit fifteen additional employees in Chubb's Real Estate Division, twelve of whom ultimately accepted offers to work at Endurance (the "Chang Group").  *See* Pappas Decl. Ex. 4; [Proposed] Second Am. Compl., Doc. No. 37, Ex. A, at ¶¶ 2-4.  Endurance extended offers of employment to all of the Chang Group on Wednesday April 20, directing its members to accept or reject these offers by 5pm on Thursday April 21, to keep the offers confidential, and to notify Chubb of their resignations on the same day on Friday, April 22, 2016.  *See* Pappas Decl. Ex's 5 & 6.  The result of Defendants' scheme was to create a brand new Global Risk Solutions business within Endurance for which approximately 70-percent of the management team is comprised of the Chang Group.  *See* Pappas Decl. Ex. 7 at 4.

## II.   CHANG SOLICITS CHUBB'S CLIENTS AND BROKERS IN VIOLATION OF HIS AGREEMENTS

Chang and the majority of the Chang Group are parties to Restricted Stock Unit ("RSU") Agreements and Performance Unit Award ("PUA") Agreements, pursuant to which they were granted significant equity awards.[1]  *See* Pappas Decl. Ex. 8 (2014 RSU Agreement); Pappas Decl. Ex. 9 (2014 PUA Agreement); Pappas Decl. Ex. 10 (2013 RSU Agreement); Pappas Decl. Ex. 11 (2013 PUA Agreement); Pappas Decl. Ex. 12 (Restricted stock unit grant details and acknowledgements by certain members of Chang Group of RSU Agreements); Pappas Decl. Ex. 13 (Restricted stock unit grant details for member of Chang Group).  Pursuant to these

---

[1] In addition to Michael Chang, the following Chang Group members are also subject to RSU Agreements containing non-solicitation provisions: Christopher Adolph, Defendant Bentley Betts, Jason Dockery, Nilo Enriquez, Barbara Frare, Josh Pillion, Ionel Rizea, Daryl Dubrovich and Rob Tuohy.  *See* Pappas Decl. Ex.'s. 12 & 13.

4

agreements, for one year following their resignations from Chubb, Chang and members of the Chang Group subject to the agreements cannot directly or indirectly solicit Chubb customers or employees and cannot disclose or use Chubb's confidential or proprietary information for the benefit of any person other than Chubb.  *See* Pappas Decl. Exs. 8-11.  The non-solicitation covenants of the 2014 RSU and PSU Agreements provide in relevant part as follows:

> Unless the Participant has received prior written authorization from the Corporation's Chief Executive Officer, the Participant shall not during his or her employment or service with the Corporation and for a period of one year following any termination of such employment or service relationship (the "Restricted Period"):
>
> …
>
> (ii) Directly or indirectly, solicit or accept business on behalf of a Competitive Business from any Customer with whom the Participant has had, or employees reporting to the Participant have had, personal contact or dealings on behalf of the Corporation during the one-year period preceding the Restricted Period.

Pappas Decl. Ex's. 8 & 9.  "Customers" is expressly defined to mean "a person or entity to which [Chubb] is at the time providing services (which includes the provision of insurance or any other contractual obligation under any products of [Chubb])" including "any broker, agent, or other third party acting for or on behalf of such broker or agent."  Pappas Decl. Ex's. 8 & 9.

Despite these clear contractual prohibitions, Chubb employees have by chance observed Chang meeting with brokers and clients on several occasions.  For example, on June 21, 2016, Chang and several other members of the Chang Group were observed leaving the offices of Chubb broker, ███.  *See* Declaration of James A. Darling, dated July 5, 2016 ("Darling Decl.") ¶¶ 4-6.  Chubb recently learned that Endurance made a bid to ███ for the business of a Chubb customer, ███, through an ███ account executive with whom Chang worked closely while at Chubb, ███.  *Id.* at ¶¶ 9, 12.  During the year before his departure, Chang had extensive dealings with ███, and specifically with Mr. ███  *Id.* at ¶ 9.  On July 1,

2016, Chubb learned that Chang's solicitation of ███████ had succeeded.

On May 5, 2016, Chang solicited another broker, ██████ with respect to two additional Chubb clients, ████████████ and ████████████. *See* Declaration of Andrew Hurley, dated July 5, 2016 ("7/5/16 Hurley Decl.") ¶¶ 3-7.  During a meeting at ██████offices to discuss coverages for two Chubb clients, a Chubb representative observed Chang's business card in front of representatives of clients ████████████ and ████████████. *Id.* at ¶¶ 3-7.

Approximately two months after resigning from Chubb, Defendant Chang was observed meeting with Chubb's customers and brokers for those customers at the Risk Management Society Conference ("RIMS") which took place from April 10 through April 13, 2016.  *Id.* at ¶¶ 8-11.  These meetings occurred in dedicated client meeting spaces which were set aside for the purpose of conducting business, and were not part of the social activities at the conference. Declaration of Andrew Hurley, dated May 3, 2016 ("5/3/16 Hurley Decl.") ¶ 4.

On June 21, 2016, Chubb also learned that Endurance Reinsurance Corporation of America, an affiliate of Defendant Endurance, had attempted to secure the business of one of the Real Estate Division's largest accounts, ████████████ a risk management group comprised of hundreds of different companies that purchase insurance collectively.  *See* Declaration of Peter Tucker, dated July 5, 2016 ("Tucker Decl.") ¶¶ 2-7.  While employed by Chubb, Defendant Chang was the person in charge of and most knowledgeable about the ████████████ account and dealt directly with ████ as the insurance broker for that account.  *See id.* at ¶ 3.  Chang had extensive knowledge of the underwriting of this account as well as pricing information and the history of the account.  *Id.* ████████████ and its insurance broker and managing agent, ████, did not provide Chubb, as the incumbent insurance provider, with the customary 45 to 90 days' notice, standard in the industry, that ████████████ was soliciting bids from other insurance

companies, including Endurance, nor was Chubb initially given an opportunity to bid against Endurance. *Id.* at ¶¶ 5-8. Chubb finally got the chance to bid after ▮▮▮ informed Chubb that ▮▮▮ had received a bit from Endurance and was considering moving its business to Endurance. *See id.* at ¶¶ 9-12. ▮▮▮ ultimately decided to remain with Chubb, but only after Chubb offered additional insurance coverage and decreased its rates. *See id.*

## III. DEFENDANTS AND THE CHANG GROUP MISAPPROPRIATE CONFIDENTIAL INFORMATION AS PART OF THEIR SCHEME TO UNFAIRLY COMPETE WITH CHUBB

Defendants Chang, Betts and the Chang Group improperly acquired and removed a plethora of confidential information from Chubb immediately prior to their respective departures, including documents containing client information that could be used to aid Endurance in soliciting and servicing Chubb customers and brokers. *See* Am. Compl. at ¶¶ 62, 66-67. Chang and the Chang Group accessed confidential information on Chubb's computer system for the purpose of sending such information to their personal email accounts and downloading, transferring, saving or storing such information on cloud service platforms and portable storage devices in violation of Chubb's written policies governing data and information security and confidentiality. *See* Declaration of Dwayne Steinway, dated May 3, 2016 ¶¶ 2-3; Declaration of J. Christopher Racich, dated May 16, 2016 ¶¶ 11-15.

Additionally, Chang, Betts, and five members of the Chang Group retained hard copy documents that included several categories of confidential Chubb business information. Pappas Decl. ¶¶ 15-18. The retained documents included client-specific policy information and risk analyses, service plan proposals, client relationship chronologies, copies of insurance policies, and Chubb business strategies. *Id.* at ¶ 18. A number of these hard copy documents related to ▮▮▮▮▮, one of Chubb's largest accounts that was targeted by Endurance during the week of June 16, 2016. *See* Pappas Decl. Ex. 14.

<u>**ARGUMENT**</u>

**I.    CHUBB IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM CONTINUING THEIR MISDEEDS**

Consistent with the goal of an emergency injunction to "maintain the status quo, defined as the last, peaceable, noncontested status of the parties," *see Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004), Chubb seeks to protect the status quo of its client and broker relationships in which Chubb has invested significant time and taken measures to protect through reasonable and carefully drafted restricted covenants.  Chubb is entitled to a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure because the evidence clearly establishes that:  (1) Chubb is likely to succeed on the merits of its claims; (2) if injunctive relief is denied, Chubb will suffer irreparable harm; (3) granting the injunction will not result in any harm to Defendants; and (4) it is in the public interest that Defendants are enjoined.  *See, e.g.*, *ADP, LLC v. Jacobs*, No. 2:15-3710, 2015 WL 4670805, at *3 (D.N.J. Aug. 5, 2015); *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2009).

**A.    <u>Chubb Has Demonstrated A Reasonable Probability of Success On The Merits Of Its Claims</u>**

Chubb is likely to succeed on the merits of its claims against Defendant Chang for breach of contract, and against Defendant Endurance for tortious interference with prospective economic advantage and unfair competition.  *See Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800 (3d Cir. 1998).  A party is likely to succeed on the merits when there is a reasonable probability of eventual success in the litigation; this element does not require a showing that a final decision in the movant's favor is "wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits." *Tillery v. Hayman*, No. CIV.A.07-2662, 2008 WL 5416392, at *2 (D.N.J. Dec. 22, 2008) (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975)); *see also*

8

*BigStar Entm't Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y 2000) (a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent'") (citation omitted).

Defendant Chang voluntarily entered into valid, enforceable agreements with Chubb containing non-solicitation covenants, and is violating those agreements for his and Endurance's economic advantage by soliciting business from Chubb's customers, both directly and through brokers for those customers with whom Chang interacted while he worked for Chubb. *See* Pappas Decl. Exs. 8-11; Darling Decl. ¶¶ 4-13; 7/5/16 Hurley Decl. ¶¶ 3-11; Tucker Decl. Endurance is well aware of Chang's contractual and legal obligations. *See* Pappas Decl. Ex. 15. Yet, Endurance is encouraging and accepting the benefits of these violations and unlawfully interfering with Chubb's existing and prospective contractual and business relationships with its customers and brokers. On the basis of these actions and others, Chubb has demonstrated a reasonable probability of success on its claims[2], warranting injunctive relief.

### 1.    Chubb is Likely to Succeed On The Merits Of Its Breach of Contract Claims

Chubb has demonstrated a reasonable likelihood of success on the merits of its claims for breach of contract against Chang. The evidence establishes a reasonable likelihood that a jury would find that Chang breached, and threatens to continue to breach, the provisions of the RSU and PUA Agreements, which prohibit direct or indirect solicitation or acceptance of business on behalf of Endurance from Chubb clients and brokers with whom Chang or members of his team at Chubb had personal dealings during his last year of employment at Chubb. *See Chemetall US Inc. v. Donald Laflamme and Coral Chemical Co.*, CIV.A. 16-780, 2016 WL 885309, at *14

---

[2] While not a basis for the present motion, for the reasons stated in Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 42), plaintiff is also likely to succeed on its claim under the Computer Fraud and Abuse Act.

(D.N.J. Mar. 8, 2016) (granting preliminary injunction and finding likelihood of success on breach of non-solicit agreement where defendant visited a former customer immediately after commencing employment with a competitor)[3].

To establish a claim for breach of contract, a plaintiff must show the existence of a valid contract between the parties, defendant's breach of that contract, damages flowing therefrom, that the plaintiff performed its own contractual obligations. *Chemetall*, 2016 WL 885309, at *8 (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). Plaintiffs seek injunctive relief to enjoin Defendant Chang's violations of the non-solicitation provisions pertaining to clients and brokers contained in the RSU and PUA Agreements. *See* Pappas Decl. Ex. 8 (2014 RSU Agreement at ¶ 8(b): "Non-Solicitation"). As distinct from covenants not to compete, New Jersey case law does not provide for any special rules limiting the enforceability of agreements not to solicit customers or employees. *See, e.g., Scholastic Funding, LLC v. Kimble*, No. 07-557 (JLL), 2007 WL 1231795, at *4-6 (April 24, 2007) (examining separately alleged breaches of non-compete provision and non-solicitation provision in employment contract and applying standard requiring "reasonableness under the circumstances" only to the former). The terms of Chang's non-solicitation covenants are unambiguous, and there can be no dispute that Chubb delivered the consideration to Chang for these covenants, consideration valued ▇▇▇▇▇▇▇ ▇▇▇▇▇ *See* Pappas Decl. Ex. 16. Therefore, consistent with well-established principles of contractual interpretation, the Court should enforce the provision in accordance with its expressed terms. *Domanske v. Rapid-Am. Corp.*, 330 N.J. Super. 241, 246, 749 A.2d 399, 402

---

[3] The RSU and PUA Agreements provide that they are "governed by and construed in accordance with the laws of the State of New Jersey (without reference to the principles of conflicts of law)" and that all disputes "involving th[e] [a]greement[s] must be brought in a state or federal court in New Jersey." Pappas Decl. Ex. 8 at ¶ 12; Ex. 9 at ¶ 14; Ex. 10 at ¶ 12; Ex. 11 at ¶ 14.

(N.J. App. Div. 2000)("Under long-settled principles, the secret, unexpressed intent of a party cannot be used to vary the terms of an agreement.")

Notwithstanding that the contractual provision at issue is undoubtedly a non-solicitation restriction as opposed to a non-compete, the provision also satisfies the standard for enforceability applicable to non-compete agreements.  A post-employment covenant not to compete is enforceable if its terms are reasonable in light of the totality of the circumstances. *Nat'l Reprographics*, 621 F. Supp. 3d at 222-23.  To satisfy this standard, a restrictive covenant must:  (1) be reasonably necessary to protect the employer's legitimate business interests; (2) not cause undue hardship to the employee; and (3) not impair the public interest.  *Id.* at 223; *Chemetall*, 2016 WL 885309, at *7, *8 (quotations and citations omitted).

These requirements are easily satisfied here.  Chubb undoubtedly has protectable interests in its customer and broker relationships.  *See Ingersoll-Rand v. Ciavatta*, 110 N.J. 609, 636 (1988) (employers have a legitimate interest "in protecting trade secrets, confidential information, and customer relations"); *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33 (1971) (employer has "a patently legitimate interest in protecting his trade secrets as well as . . . confidential business information and . . . an equally legitimate interest in protecting . . . customer relationships"); *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 424 (3d Cir. 2010) ("A business' goodwill entitled to protection is that which represents a preexisting relationship arising from a continuous course of business.)(quotations and citations omitted). Indeed, Chubb expends significant resources for the specific purpose of assisting and facilitating high level employees such as Chang to develop strong broker relationships in order to generate and maintain business on behalf of Chubb.  7/5/16 Hurley Decl. ¶ 13-14.  As is customary in the industry, Chang and his team at Chubb interacted regularly with brokers regarding customer

contracts and accounts.  Accordingly, Chubb expressly includes brokers within the scope of the customer non-solicitation provision in its RSU and PUA Agreements.  Pappas Decl. Exs. 8-11.

Additionally, the terms of the client non-solicitation provisions in the agreements impose no undue burden on Chang, do not hinder his ability to earn a living, and have a limited duration of one year.  *ADP*, 2015 WL 4670805, at *5 (enjoining defendant from soliciting or contacting the plaintiff's current or prospective clients whose identity the defendant learned through his employment with plaintiff and finding one-year limitation was neither "onerous" nor "unreasonable"); *Schuhalter v. Salerno*, 279 N.J. Super. 504, 513 (App. Div. 1995) (noting that a restrictive covenant's two-year term was a "modest imposition").  There is also no dispute that Chang knowingly and willingly accepted the benefit of his bargain in entering into the RSU and PUA Agreements, as he received equity awards pursuant to these contracts valued ████████ ████████  *See* Pappas Decl. Ex. 16.

The facts establish that Chang has breached and continues to breach the valid and enforceable covenants described above.  This Court has granted preliminary injunctive relief in factually similar circumstances.  In one such case, the Court found that plaintiff had demonstrated a reasonable likelihood of success on its breach of contract claim where there was evidence that defendants used their knowledge of the plaintiff's loan terms to help another company obtain a competitive advantage.  *Am. Fin. Res., Inc. v. Money Source, Inc.*, No. 14-1651, 2014 WL 1705617, at *10 (D.N.J. Apr. 29, 2014).  In so holding, the Court highlighted that the defendants sent confidential information to personal email accounts and that the plaintiff's competitor sent the plaintiff's client an email informing it that the defendants had moved companies.  *Id.* at *3, *8-*10; *see also Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. 06-567, 2006 U.S. Dist. LEXIS 34841 at *48 (E.D. Pa. May 31, 2006) (granting preliminary

injunction based on similar non-solicit provision where it was "clear from the evidence presented that Ms. Haas participated in attempting to bring new clients to Bilcare, and that some of those clients were customers of Fisher").

Here, like in *Am. Fin. Res., Inc. v. Money Source, Inc.*, the evidence demonstrates that Defendant Chang has and continues to directly and indirectly solicit Chubb's clients and brokers to help Endurance obtain a competitive advantage. *See* Pappas Decl. Ex. 8 (2014 RSU Agreement); Pappas Decl. Ex. 9 (2014 PUA Agreement). Based only on happenstance and without any targeted investigation, Plaintiffs already have observed that Chang solicited clients and brokers, at the very least on June 21, 2016, May 5, 2016 and between April 10 and April 13, 2016. *See* Darling Decl. ¶ 6; 5/3/16 Hurley Decl. ¶ 4; 7/5/16 Hurley Decl. ¶¶ 3-11. Chubb will undoubtedly uncover many more violations by Chang when it is able to conduct discovery on these issues.

Chang's meetings with Chubb clients and brokers are aimed at moving Chubb's client relationships to Endurance, in direct violation of his agreements with Chubb. Indeed, as described above, Chubb has already faced the near loss of one of its largest accounts in circumstances strongly suggesting Chang's involvement. *See generally* Tucker Decl. Additionally, Chubb learned that only days after Chang met with representatives of broker ███ with whom he worked extensively while employed by Chubb, ███ solicited a bid from Chang's employer, Endurance, on behalf of ███████. *See* Darling Decl. ¶¶ 6-12. Chang's solicitation of ███████ has succeeded. *Id.* at ¶ 13. This not only damaged Chubb financially, but represents continuing harm to its goodwill and customer relationships.

Based on these facts, Chubb has established a likelihood of success on the merits of its breach of contract claim, because a jury could reasonably find that Chang, either directly or

indirectly, solicited or accepted on behalf of Endurance the business of Chubb's clients and brokers with whom he had personal dealings during his final year at Chubb.  Accordingly, injunctive relief is appropriate and necessary.

### 2.   Chubb is Likely to Succeed on The Merits Of Its Tortious Interference and Unfair Competition Claims

Chubb has also established a reasonable likelihood of success on the merits of its claims that Defendant Endurance tortiously interfered with its existing and prospective contractual and business relationships, thereby depriving Chubb of economic advantage, and has engaged in unfair competition.  Chubb has established that the Defendants have deliberately and without privilege or justification interfered, and intend to continue to interfere, with Chubb's relationships with its clients and brokers and associated business opportunities.  *See Printing Mart Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750 (1989) ("Not only does New Jersey law protect a party's interest in a contract already made, the law protects also a [person's] interest in reasonable expectations of economic advantage.") (citations and internal quotation marks omitted); *Lamorte Burns & Co.*, *v. Walters,* 167 N.J. 285, 305 (2001)("An action for tortious interference with a prospective business relation protects the right to pursue one's business, calling, or occupation, free from undue influence or molestation.")(citation omitted); *Howmedica Osteonics v. Zimmer Inc.,* 461 F. App'x 192 (3d Cir. 2012).  To establish a claim for tortious interference with prospective economic advantage, a party must show "that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that is suffered losses thereby." *Lamorte*, 167 N.J. at 306.  Plaintiffs need not establish actual "ill will;" rather, a defendant's actions are malicious so long as the "harm was inflicted intentionally and without justification or excuse." *Id.* (citation omitted).

The *Howmedica* case is instructive.  There, the Third Circuit affirmed in part a

preliminary injunction enjoining the defendant from soliciting plaintiff's customers or

employees. The defendants in that case had engaged in a scheme to acquire the bulk of the

plaintiffs' employees in two cities in which it previously had "virtually no market presence." 461

F. App'x at 195.  The defendant employer acquired compensation and sales data from two

managers in order to make competitive offers to the plaintiff's employees, who then resigned en

masse.  *Id*. The District Court preliminarily enjoined the solicitation of the plaintiff's employees

and customers, finding that the plaintiff's tortious interference claim was likely to succeed

"because the record revealed solicitations of both [plaintiff's] employees and customers in

violation of its non-compete agreements." *Id*. at 196. The Third Circuit affirmed, reasoning that

the plaintiff company was entitled to a preliminary injunction against the solicitation of its

customers, and of its employees within the relevant offices. *Id*. at 197-98.

  The facts here clearly establish a similar scheme, whereby Endurance has and continues

to interfere with Chubb's business relationships and reasonably expected economic advantages.

As fully set forth above, on at least three occasions since accepting employment at Endurance,

Defendant Chang met with customers and brokers with whom he previously had personal

dealings on behalf of Chubb. *See* 5/3/16 Hurley Decl. ¶ 4; 7/5/16 Hurley Decl. ¶¶ 3-11; Darling

Decl. ¶¶ 4-6.  Common sense dictates that these meetings occurred for the purpose of soliciting

business from these customers and brokers, on behalf of and for the benefit of Endurance.

Indeed, the facts suggest that Endurance has already capitalized on assistance and information

from Chang and likely other members of the Chang Group in attempting to secure the business

of multiple Chubb customers, at least two of which were in the process of renewing their

contracts with Chubb. *See generally* Darling Decl.; Tucker Decl.  The improper acquisition and

possession of Chubb's confidential information by Chang and the other members of the Chang

Group, including highly confidential documents related to a customer Endurance attempted to secure for itself, further supports the inference that Endurance is knowingly benefitting from Chang's violations and knowingly interfering with Chubb's business relationships. *See Rochester Midland Corp. v. Enerco Corp.*, No. 1:08-cv98, 2009 U.S. Dist. LEXIS 46103, at *5 (W.D. Mich. June 1, 2009) (tortious interference claim upheld where there was evidence that defendant accepted confidential pricing information from employee when it knew that such information was the fruit of employee's willful breach of contract and breach of the duty of loyalty to competitor, and used that information to under-bid competitor or otherwise persuade customers to switch).

These facts are also sufficient to establish Chubb's likelihood of success on its unfair competition claim. *Lamorte*, 167 N.J. at 309 (holding plaintiff was entitled to summary judgment on unfair competition claim for same reasons sustaining tortious interference claim and noting, "[w]e respect the principles of free competition, but defendants' taking of plaintiff's confidential and proprietary property and then using it effectively to target plaintiffs' clients, is contrary to the notion of free competition that is fair.").

**B.       Chubb Suffered and Will Suffer Irreparable Harm Absent Injunctive Relief**

Defendants' actions continue to irreparably harm Chubb.  A plaintiff demonstrates irreparable harm and is entitled to preliminary injunctive relief when it is threatened with potential harm that "cannot be redressed by a legal or equitable remedy following trial." *Nat'l Reprographics*, 621 F. Supp. 2d at 229.  "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Id.* (citing *Kos Pharms. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004); *see also Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (same).  Courts have found that absent injunctive relief restraining a defendant from soliciting plaintiff's customers, a plaintiff faces a risk of "immediate irreparable

harm to its goodwill and reputation." *ADP*, 2015 WL 4670805, at *7 (evidence that defendant had already contacted plaintiff's clients sufficient to show that defendant "presumably ha[d] a number of others in mind [to] contact," and this threat produced a sense of "immediacy rather than mere risk"); *Phillip Morris, Inc. v. Pittsburgh Penguins Inc.*, 589 F. Supp. 912, 920 (W.D. Pa. 1983) (loss of potential customers cannot be calculated in money damages); *see also NextGen Healthcare Info. Sys., Inc. v. Messier*, No. 05-CV-5230, 2005 WL 3021095, at *13 (E.D. Pa. Nov. 10, 2005) (use of business' confidential information and trade secrets to damage its competitive position recognized to cause irreparable harm).

Given that Defendant Chang has been observed on multiple occasions meeting with brokers and/or customers, and that Endurance has already targeted longstanding and significant clients of Chubb's with whom Chang was intimately involved, the threat of irreparable harm to Chubb is both actual and acute.  In fact, in executing the RSU and PUA Agreements, Chang acknowledged and agreed to terms which unequivocally provide that any violation of the restrictive covenants would "cause [Chubb] irreparable injury for which adequate remedies are not available at law."  Pappas Decl. Ex. 8 at ¶ 8(e); Pappas Decl. Ex. 9 at ¶ 10(e).  While Defendants have agreed to cease their violation of the employee non-solicitation provisions to the Agreements and to cause the Chang Group to return Chubb's confidential documents that they failed to return following their resignations, they continue to violate the customer non-solicitation provisions.  Chubb made a long-term investment of significant resources in supporting and developing customer and broker relationships and its own proprietary and confidential information, *see* 7/5/16 Hurley Decl. ¶ 12-15, and will be irreparably harmed if Defendants reap the benefits of Chubb's investment by unfairly and unlawfully competing with Chubb.

Chubb therefore requests an injunction, consistent with the accompanying Proposed Order, 1) enjoining Defendant Chang, for a period of one year from entry of the Order, from directly or indirectly soliciting and/or accepting business on behalf of Endurance from any customer of Chubb, with "Customer" defined as any person or entity to which Chubb provided services as of February 9, 2016, including, without limitation any broker, agent, or other third party acting for or on behalf of such broker or agent, in each case as to whom or as to with Chang, or any Chubb employee working under Chang, had personal contact or dealings on behalf of Chubb during the one-year period preceding February 9, 2016, and 2) enjoining Defendant Endurance, for a period of one year from entry of the Order, from aiding, assisting, encouraging, inducing, or acting in concert with Chang to directly or indirectly solicit and/or accept business from any "Customer" of Chubb as of February 9, 2016, including, without limitation any broker, agent, or other third party acting for or on behalf of such broker or agent, in each case as to whom or as to which Chang, or any Chubb employee working under Chang, had personal contact or dealings on behalf of Chubb during the one-year period preceding February 9, 2016.  Because the terms of the non-solicitation provision provide for a one-year period of compliance, consistent with equitable principles, Chubb is entitled to a preliminary injunction of one-year in duration from the time the Order is filed to account for the period of Defendants' non-compliance.  *See, e.g., J.H. Goldberg Co., Inc. v. Stern*, 53 A.D.2d 246, 252 (N.Y. App. Div. 4th Dept. 1976) ("While the restriction against Stern engaging in such business would properly have extended to May 15, 1976, the interests of justice demand that the two-week period in which Stern was in violation of the covenant be added thereto.").

### C.      The Balance of Hardships Tilts Decidedly Toward Chubb

The balance of the harms decidedly supports injunctive relief.  Chubb's request for preliminary injunctive relief seeks to maintain the status quo by returning all parties to "the last,

peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).  If Defendants are allowed to solicit Chubb's clients, including through unlawful use Chubb's proprietary business information, Chubb would suffer irreparable harm to its reputation, good will with clients and employees, and business.  By contrast, any alleged hardship faced by Defendants would be minimal and, in any event, temporary.  *See* Am. Cmpl. ¶¶ 47-48.  The enforcement of Chubb's non-solicitation agreements do not hinder Defendants' ability to earn a living, but rather merely certify that any competition would be lawful and legitimate.  *See, e.g.*, *Ikon v. Usherwood Off. Tech., Inc*., No. 9202–08, 2008 WL 5206291, at *17 n.7 (Sup. Ct. Albany Cnty, Dec. 12, 2008)(enforcing employee non-solicitation provision because such provisions, which do not preclude defendants from working, "do not implicate policy concerns raised by covenants against competition").  Chubb seeks no more than the reasonable enforcement of its valid and enforceable contractual non-solicitation provisions, a request with which Defendants insist they are already complying, despite the evidence to the contrary.

Defendant Chang can make no legitimate claim of hardship resulting from the enforcement of his known, signed, employment-related agreements.  A defendant cannot claim hardship resulting from restrictive covenants to which he was knowingly bound.  *See Nat'l Reprographics*, 621 F. Supp. 3d at 230 (explaining that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon himself" and noting that the defendant was "well aware" of the post-employment restrictions in a contract and he was free to compete without relying on the benefits of the knowledge and experience he got by working from the plaintiff); *see also HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) ("Furthermore, where, as here,

the employee 'willfully breach[ed] a valid restrictive covenant, the harm to [him] is a predictable consequence of [his] willful breach and . . . is not the type of harm from which we seek to protect [him].'") (citation omitted); *Chemetall*, 2016 WL 885309, at *17 ("To the extent that [defendant] may lose his job [with the competitor] if he is not able to solicit his prior Chemetall customers for one year, that is an outcome that stems from a risk that was known to both him and [the competitor] prior to him leaving Chemetall."); *The Community Hosp. Group, Inc. v. More*, 183 N.J. 36, 59 (2005)("If the employee terminates the relationship, the court is less likely to find undue hardship, as the employee put himself or herself in the position of bringing the restriction into play.").

> **D.    The Public Interest Favors Granting Injunctive Relief**

The public interest also favors holding Defendants to the terms of the non-solicitation and non-disclosure employment agreements to which they agreed to be bound and enjoining them from unlawful misappropriation of trade secrets.  Indeed, the public interest is well served by requiring parties that enter binding contracts to honor their terms.  *See Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 481 (E.D. Pa. 2007) ("[R]estrictive covenants serve an important business interest in today's economy.") (citing *Victaulic v. Tieman*, 499 F.3d 227, 237 (3d Cir. 2007)); *Nat'l Reprographics*, 621 F. Supp. 3d at 229-30 (finding that "enforcing reasonable terms of an employment agreement is within the public interest" including by "safeguarding fair commercial practices") (citation omitted).

The employment agreements here protect the integrity of Chubb's business relationships and valuable and confidential customer information, which promotes a competitive business environment and prudent commercial practices.  *See Wright Med. Tech., Inc. v. Somers*, 37 F. Supp. 2d 673, 684 (D.N.J. 1999) (holding that the public is not harmed by the enforcement of non-solicitation provisions if customers are still free to choose between companies); *see also*

*ACE Am. Ins. Co. v. Wachovia Ins. Agency, Inc.*, No. 08-4369, 2008 WL 4630486, at *9 (D.N.J. Oct. 17, 2008) (noting that "[t]he public interest generally weighs in favor of enforcing private contracts" and that "[c]onfidentiality agreements, encouraging the conduct of business in a forthright and honest manner between participants in the same industry, certainly fall within that public policy").  Permitting Defendants to violate the terms of the agreements would be undermine that compelling public interest.  *See, e.g.*, *ADP*, 2015 WL 4670805, at *8; *Nat'l Reprographics*, 621 F. Supp. 3d at 229.

## CONCLUSION

For all of the reasons set forth above, Chubb respectfully requests that this Court enforce the status quo by granting its request for preliminary injunctive relief and enjoining Defendants' misconduct.

Dated: July 5, 2016

Respectfully submitted,

*/s/ Liza M. Walsh*
Liza M. Walsh
Selina M. Ellis
Walsh Pizzi O'Reilly Falanga LLP
One Riverfront Plaza
1037 Raymond Boulevard, 6th Floor
Newark, New Jersey 07102
Tel: (973) 757-1100
lwalsh@thewalshfirm.com
sellis@thewalshfirm.com

Nicholas J. Pappas
Jeffrey S. Klein (admitted *pro hac vice*)
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
jeffrey.klein@weil.com
nicholas.pappas@weil.com

Diane P. Sullivan
Allison M. Brown
Weil Gotshal & Manges LLP
17 Hulfish Street #201
Princeton, New Jersey 08542
Tel: (609) 986-1120
diane.sullivan@weil.com
allison.brown@weil.com

*Counsel for Plaintiffs*