## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------X

CHUBB INA HOLDINGS INC.
(f/k/a THE CHUBB CORPORATION)
and FEDERAL INSURANCE COMPANY,

        Plaintiffs,

        v.                         Civil Action No. 3:16-cv-02354

MICHAEL CHANG, BENTLEY BETTS,
DARYL DUBROVICH,
ENDURANCE SERVICES LTD.,
ENDURANCE SPECIALTY HOLDINGS LTD.,
and ENDURANCE REINSURANCE
CORPORATION OF AMERICA,

        Defendants.

------------------------------X

### SECOND AMENDED COMPLAINT AND DEMAND FOR JURY

        NOW COME Plaintiffs Chubb INA Holdings, Inc. (f/k/a The Chubb Corporation) and Federal Insurance Company (collectively "Chubb" or the "Company"), by and through their undersigned counsel, and allege the following for their Second Amended Complaint:

### Nature Of The Action

        1.    This action arises out of a scheme by Endurance Services Ltd. ("Endurance Services"), Endurance Specialty Holdings Ltd. ("Endurance Holdings"), and Endurance Reinsurance Corporation of America ("Endurance Reinsurance" and collectively, "Endurance"), and Michael Chang ("Chang") to create an instantly successful risk management business, with the same level of skill and professionalism demonstrated by the insurance underwriters, risk engineers and claims professionals of Chubb's Real Estate and Hospitality Division. Rather than

spending the many years and substantial effort and investment required to build a highly successful organization like Chubb's, however, Endurance and Chang focused their efforts on willfully and maliciously targeting and soliciting Chubb's employees for employment at Endurance.

2.     Chang's and Endurance's scheme was simple.  Because Chang had intimate knowledge of the team in Chubb's Real Estate and Hospitality Division, having worked at Chubb for more than 19 years, he would indirectly coordinate Endurance Holdings' and Endurance Service's recruitment of many of the key employees of that division through others, including through Endurance employees and an outside search firm.

3.     This scheme unfolded exactly as planned.  In the weeks after February 9, 2016, Chang began indirectly working with other employees of Endurance and/or an outside search firm to cherry pick from the senior ranks of Chubb's Real Estate and Hospitality Division and to coordinate a simultaneous lift out of a block of such employees as a 'turnkey' operation. Defendants identified and Endurance Holdings and Endurance Services hired 12 employees in Chubb's Real Estate and Hospitality Division (the "Former Chubb Employees") to work with Chang at Endurance in violation of Chang's post-employment contractual obligations and Defendants' other legal obligations to Chubb.

4.     Fifteen employees in the division received offers and all but three employees accepted.  On information and belief, Chang identified and described for Endurance Holdings and Endurance Services a number of his former Chubb colleagues who had the skill set and experience that Endurance needed to launch a new line of business in which it previously had little or no activity.  On information and belief, these individuals were not otherwise known to Endurance or identified through means independent of Endurance Holdings' and Endurance

Services' discussions with Chang and/or through the direct or indirect use of Chubb's confidential information by Endurance Holdings and Endurance Services and the outside search firm. In fact, Chang provided his former colleagues at Chubb with contact information for Tony Chimera, Senior Vice President of Human Resources of Endurance Services, for the precise purpose of facilitating Endurance Holdings and Endurance Services hiring them to work with Chang at Endurance Holdings. Chimera further obtained many of the names and positions of the senior management of Chubb's Real Estate and Hospitality Division from a confidential Chubb document supplied to him by the outside search firm. Of the 18 individuals identified on the document, nine were solicited by Endurance Holdings and Endurance Services.

5.     On information and belief, Endurance Services also reached out to cherry-pick employees via Linked-In. Acting through Chimera, and after perfunctory telephone interviews without the benefit of resumes from most of the former Chubb employees, Endurance Services delivered written offers of employment to the selected Former Chubb Employees at the same time. The offers were greatly in excess of market rates. These offers expressly stated that they would be open for only a very brief period of time, thus pressuring the Former Chub Employees to make a decision in haste.

6.     Endurance Services and Chang caused the Former Chubb Employees to notify Chubb of their resignations on the same day, Friday April 22, 2016.

7.     This mass resignation was designed to cripple Chubb's business operations in the Real Estate and Hospitality Division. Specifically, because of these resignations, Chubb would lose 40% of the senior management of Chubb's Real Estate and Hospitality Division in one day. By means of the mass resignation, the Defendants and the Former Chubb Employees ensured that their departures were coordinated so as to exact maximum harm to Chubb's relationships

with numerous important accounts serviced by the Real Estate and Hospitality Division.  Per the Defendants' plan, the Former Chubb Employees will all begin to work together at Endurance Holdings  shortly after their resignations from Chubb, and they will soon seek to replicate Chubb's business at Endurance Holdings.

8.      In addition to the simultaneous, mass departure of a significant part of a Chubb business unit, several of the employees (including, but not limited to, Chang himself, Defendant Betts and Defendant Dubrovich) recruited by Defendants also accessed and removed from Chubb's computer systems confidential business records of Chubb.  The misappropriation of documents was undertaken on a massive scale through multiple mediums.  For example, at least five of the employees who resigned used their Chubb computers to either send confidential Chubb documents to their personal email accounts or to place and store documents on personal hard drives and in cloud storage platforms in the weeks preceding their resignations.  One employee also retained over 15,000 pages of Chubb documents at her home following her resignation, including coverage binders, internal memoranda and correspondence, and sensitive information and data concerning numerous Chubb clients.  These employees never acknowledged possession of these Chubb confidential materials or sought to return them, in clear contravention of Chubb's express written policies, as well as federal and state laws.

9.      On information and belief, Chang will be paid handsomely by Endurance Holdings and Endurance Services for his illegal and disloyal actions against Chubb and for his promise to deliver a complete, functioning business unit.  The Former Chubb Employees will receive from Endurance Holdings and Endurance Services payments above any reasonable compensation they could have secured in the open market where only their services would be valued by a new employer.  These payments represent ill-gotten gains to Chang and the Former

Chubb Employees for unfairly securing Chubb's business relationships, not for the engagement of future services of these individuals.

10.     By participating in the above scheme, and while aided and abetted by Endurance Holdings and Endurance Services, Chang violated his agreements and legal obligations to Chubb not to use or disclose Chubb's confidential information.  Chang also violated his agreements and legal obligations to refrain from soliciting, recruiting, or taking actions assisting others to solicit or recruit Chubb's employees to work for a competitor.  Chang acted at all times as an agent for Endurance, and Endurance conspired with and participated with Chang in the unlawful scheme described further below.  In fact, Chubb notified Endurance Holdings of Chang's contractual obligations shortly after Chang's departure on February 9, 2016, but despite this knowledge Endurance Holdings, together with Endurance Services, proceeded to act in concert with Chang to unfairly and unlawfully recruit the Former Chubb Employees.

## Parties

11.     Plaintiff Chubb INA Holdings, Inc. is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania.

12.     Plaintiff Federal Insurance Company is an Indiana corporation with its principal place of business in Warren Township, New Jersey.

13.     Defendant Chang is a resident of the City and State of New York.

14.     Defendant Betts is a resident of Sherman Oaks, California.  Defendant Betts previously worked as a Senior Underwriter Specialist in Chubb's Real Estate and Hospitality Division office in Los Angeles.

15.     Defendant Dubrovich is a resident of Scottsdale, Arizona.  Defendant Dubrovich previously worked as a Senior Underwriting Specialist and Senior Underwriter I in Chubb's Real Estate and Hospitality Division.

16.     Defendant Endurance Services Ltd. is a Delaware corporation with its corporate headquarters located in Purchase, New York.  Endurance Services Ltd. does business in this District.  Endurance Services Ltd. provides general corporate services to the subsidiaries of Endurance Specialty Holdings Ltd. and is the current employer of Defendants Chang and the Former Chubb Employees.

17.     Defendant Endurance Specialty Holdings Ltd. is a Bermuda corporation with its principal place of business in Bermuda.  Endurance Holdings is an umbrella entity under which Endurance Reinsurance operates.  Endurance Holdings is a New York Stock Exchange listed insurance and reinsurance company, operating and doing business through its subsidiaries on a global basis, and including in this District.

18.     Defendant Endurance Reinsurance Corporation of America is a Delaware corporation with its principal place of business in New York, New York.   Endurance Reinsurance's business includes binding insurance for major accounts.  Endurance Reinsurance does business in this District.

19.     At all times relevant hereto, Defendants Endurance Services Ltd., Endurance Specialty Holdings Ltd., and Endurance Reinsurance Corporation of America were, and are, acting as alter egos of each other and are jointly and severally liable in this action for each other's conduct.

20.     Defendant Endurance Specialty Holdings Ltd. ultimately dominated and controlled Endurance Services Ltd. and Endurance Reinsurance Corporation of America.

21.     Defendant Endurance Specialty Holdings Ltd. operated all Endurance entities as a cohesive economic unit and disregarded the individual entities' corporate form.

## Jurisdiction And Venue

22.     This court has subject matter jurisdiction over Plaintiffs' claims pursuant to 18 U.S.C. § 1030(g), 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331, as Plaintiffs have asserted federal claims for Defendants' violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030 et. seq. and Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016 , 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 et seq.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the District.   Venue is also proper in this District pursuant to 28 U.S.C. § 1291(b)(3) because defendants are subject to the Court's personal jurisdiction with respect to this action.

24.     Defendants Chang and Betts were parties to a Restricted Stock Unit Agreements with Chubb in which they agreed that "[a]ny disputes involving this Agreement must be brought in a state or federal court in New Jersey, and the Participant acknowledges and agrees that such courts have jurisdiction over both parties."

## Statement Of Facts

A.     **Chubb's Real Estate and Hospitality Insurance Business**

25.     Chubb is a leading provider of commercial and personal property and casualty insurance, personal accident and supplemental health insurance, reinsurance and life insurance to a diverse group of clients.

26.     Clients are primarily referred to Chubb through its relationships with brokers and agents, who identify opportunities for Chubb and get paid a commission.  Broker and agent

relationships are crucial to Chubb's business and building and supporting these relationships are an important part of what Chubb employees do.  Chubb also gets business by word-of-mouth and reputation in the industry.

27.     Chubb has cultivated long-term relationships with, and reasonably expects to continue receiving referrals from, its brokers, existing clients and other referring sources.

28.     Chubb has three main classes of employees in the Real Estate and Hospitality Division: (1) Underwriters; (2) Risk Engineers; and (3) Claims Professionals.  Underwriters have a number of different roles including pricing Chubb's product and designing programs, as well as sales and marketing.  Underwriters engage in significant client development through their close relationships with the brokers who sell Chubb's product.

29.     Risk Engineers are responsible for assessing risk and making recommendations on how to mitigate loss.  Risk Engineers also perform a client facing consulting role in which they work with clients to improve their properties from both a safety and risk management standpoint.

30.     Claims Professionals work with clients once they have sustained a loss in order to help and service clients through a loss as quickly as possible.  Chubb enjoys a stellar reputation in the marketplace for empathizing with clients in a time of loss.

31.     Over the years, Chubb has developed and maintained a unique program designed to assist companies who wish to insure against major losses using property and casualty insurance.  In order to develop a long term relationship of trust and confidence with its major clients, Chubb seeks to assign the same Underwriter, Risk Engineer and Claims Professional to advise a client regarding all of its insurance needs.  In this way, Chubb not only ensures consistency of service and attention to each client's unique needs, but over time develops

goodwill with its clients.   These practices foster frequent interaction with clients, further developing the goodwill of its business.   Chubb prides itself on its success in retaining employees long-term.

32.   Chubb's practice is to ensure that clients are receiving a consistent level and quality service by assigning the same Underwriter, Risk Engineer and Claims Professional to the clients' various engagements.   The client is always given the freedom to choose which Underwriter, Risk Engineer or Claims Professional it wishes to use in order to achieve its business objectives.

33.   Chubb hired Chang in September 1996, and over time Chubb gave him increasing levels of responsibility for the Chubb Commercial Insurance Global Risk Management Group and Global Real Estate Unit.   After more than 19 years at Chubb, in January 2016 Chubb promoted Chang to President of Chubb's Real Estate and Hospitality Division.

34.   As President of the Real Estate and Hospitality Division, Chang was responsible for leading the division in the major accounts space with embedded Underwriters (with point of sale authority) spanning the following product lines: Property, Casualty, Builders Risk, Umbrella/Excess Liability, Professional Lines, and Environmental.   This also includes responsibility for servicing this business via operations, loss control, and claims.

35.   As President of its Real Estate and Hospitality Division, and through Chubb's business contacts and referrals, Chang maintained exclusive working relationships with a number of Chubb's major clients.

36.   Because clients generally form long term relationships with their Underwriters, Risk Engineer and Claims Professionals Chubb reasonably expects that clients who have

engaged Chubb for their insurance needs over a period of years will continue to accept its services so long as its services continue to be maintained at a high level of quality.

37.     Chubb's profits are derived from the premiums it charges the client, minus various expenses such as claims losses, administrative salaries and costs, taxes, benefits and insurance.

38.     Chubb's success is directly linked to its continuing relationships with its clients and working with them to manage their losses.

39.     Endurance is a competitor of Chubb in the business of property and casualty insurance.

B.     **Chubb's Confidential Information**

40.     The companies using Chubb's property and casualty insurance services are the clients of Chubb and not clients of the employees of any particular division of Chubb.

41.     Chubb maintains information regarding its clients which is not publicly available, and cannot be assembled from publicly available information.  Chubb's Confidential Information includes information regarding the client's key contact persons, its pricing and discounting preferences and tolerances, its insurance policies, its insureds, pending projects and proposals, claims experience and handling practices, sales and marketing strategies, revenues, compensation and personnel information and other non-public, business information (collectively "Confidential Information").

42.     Chubb has devoted many years to developing its Confidential Information.

43.     Chubb's Confidential Information helps Chubb and its employees to develop close and trusted business relationships with clients.  By using its Confidential Information,

Chubb is uniquely positioned to service such clients at the highest levels and to attract new sales and referrals for its services.

44.     Chubb scrupulously guards the confidentiality of its Confidential Information. For example, access to Confidential Information stored on company computers and other devices is strictly limited to Chubb employees who need particular Confidential Information to perform their job functions.  This Confidential Information may be retrieved solely through the use of a coded password assigned to Chubb employees.

45.     Chubb also maintains paper files containing Confidential Information.  Chubb employees are required to maintain the confidentiality of such paper files by keeping them in secure file drawers or locked offices accessible only to other employees in the office.  Such paper files include work product the Underwriters prepare for clients including reports, spreadsheets and other documents created for specific engagements.  The work product in these files is extremely valuable to Chubb and to its clients who engage Chubb to produce such work product.

46.     Chubb Underwriters have access to pricing, premium, and profitability information of the clients they service, as well as all of Chubb's clients.  Chubb maintains a database which allows Underwriters to browse detailed information regarding all of Chubb's clients.

47.     As an added layer of protection, the Chubb Code of Business Conduct requires employees to safeguard Chubb Confidential Information and prohibits employees from using such information for the benefit of anyone other than Chubb.   All Chubb Employees acknowledge the Code of Business Conduct annually.

11

48.     The Former Chubb Employees were entrusted with Chubb's Confidential Information subject to policies requiring them to comply with data confidentiality and security measures.  Under the Global Data Security Policy, "Highly Confidential Data and Confidential Data should only be placed in Chubb protected and approved third-party environments backed up by Chubb, and should only be accessible to individuals who have a business need to access it."  The Global Data Security Policy sets forth the following as examples of prohibited conduct:

> Place or store Highly Confidential Data or Confidential Data in unapproved applications or services. If it is important for a business team to use a particular application or service, such application or service must be approved in writing by the Chief Information Security Officer. Unless you have written approval to do so from the Chief Information Security Officer, do not use Google Docs, Office 365, Office 2 HD, GoodReader, Dropbox, Windows Mesh, Box.net, iCloud, Evernote, etc., or text messaging and photo applications on a mobile device to store Highly Confidential Data or Confidential Data.

> Forward Chubb e-mail containing Highly Confidential Data and Confidential Data to personal e-mail accounts, which includes the use of automatic e-mail forward functions or otherwise use personal e-mail for work purposes.

> Post Highly Confidential Data on public Chubb drives which permits persons without a legitimate business need to access that data.

> Store Highly Confidential Data on local and shared drives when it is not necessary to the business purpose (e.g., National Identification Numbers, like Social Security numbers and local country equivalent, should not be included in spreadsheets and other documents when not necessary to the business purpose). If it is necessary to store Highly Confidential Data on a local machine or shared drive, the document should be encrypted and the sensitive fields should be partially redacted.

49.     Pursuant to written policy, the Former Chubb Employees were also not permitted to store or transport data containing Confidential Information on a CD-Rom, DVD, USB drive, or any other portable storage media without consent and approval from the data owner and information security department.

12

50.     In addition, it is and was Chubb's policy not to permit employees to remove Confidential Information from Chubb offices, except to the extent necessary for an employee to perform his or her job responsibilities.

C.     **The Restricted Stock Unit And Performance Unit Award Agreements**

51.     Chang was a party to a number of Restricted Stock Unit Agreements ("the RSU Agreements") and Performance Unit Award Agreements ("PUA Agreements"). These agreements contained strict prohibitions regarding the misuse of Chubb confidential and proprietary information.

52.     From 2005 to 2013, Chang received approximately 16 Restrictive Stock Unit or Performance Unit Awards. Copies of the 2013 RSU Agreement and the 2013 PUA Agreement, which governed those awards, are annexed hereto as Exhibits 1 and 2. From 2014 to 2015, Chang received approximately 4 Restrictive Stock Unit or Performance Unit Awards. Copies of the 2014 RSU Agreement and the 2014 PUA Agreement, which governed those awards, are annexed hereto as Exhibits 3 and 4.

53.     The 2013 RSU Agreement and the 2013 PUA Agreement, includes the following term under the heading "Non-Disclosure":

> The Participant shall not, without prior written authorization from the Corporation's Chief Executive Officer, disclose to anyone outside the Corporation, or use (other than in the Corporation's or any of the Subsidiaries' business), any confidential information or material relating to the business of the Corporation or any of the Subsidiaries that is acquired by the Participant either during or after employment with the Corporation or any of the Subsidiaries.

54.     The 2014 RSU Agreement and the 2014 PUA Agreement, includes the following term under the heading "Non-Disclosure":

> Except as the Participant reasonably and in good faith determines to be required in the faithful performance of the Participant's duties to the Corporation or in accordance with Section 8(d), the Participant shall maintain in confidence and,

13

without prior written authorization from the Corporation's Chief Executive Officer, shall not, directly or indirectly, disclose, disseminate, publish or otherwise use, for the Participant's benefit or the benefit of any other person, any confidential or proprietary information, material or trade secrets of or relating to the business of the Corporation (including, without limitation, information with respect to the operations, processes, products, inventions, business practices, finances, clients, customers, policyholders, agents, vendors, suppliers, methods, costs, prices, contractual relationships, regulatory status, strategic business plans, technology, designs, compensation paid to employees or other terms of employment, of the Corporation) that is acquired by the Participant either during or after employment with the Corporation ("Proprietary Information").  The Participant's obligations under the preceding sentence shall continue so long as such Proprietary Information is not, or has not by legitimate means become, generally known and in the public domain (other than by means of the Participant's direct or indirect disclosure of such Proprietary Information) and continues to be maintained as Proprietary Information by the Corporation.  The Participant and the Corporation hereby stipulate and agree that, as between them, the Proprietary Information identified herein is important, material and affects the successful conduct of the businesses of the Corporation.

55.     The 2013 RSU Agreement and the 2013 PUA Agreement also contains a non-solicitation agreement, which provides:

Unless the Participant has received prior written authorization from the Corporation's Chief Executive Officer, the Participant shall not during his or her employment or service with the Corporation or any of the Subsidiaries and for a period of one year following any termination of such employment or service relationship (the "Restricted Period"):

(i) Directly or indirectly, employ, solicit, persuade, encourage or induce any individual employed by the Corporation or any of the Subsidiaries to become employed by or associated with any person or entity other than the Corporation or any of the Subsidiaries; or

(ii) Directly or indirectly, solicit business on behalf of a Competitive Business from any Customer with whom the Participant has had, or employees reporting to the Participant have had, personal contact or dealings with on behalf of the Corporation or any of the Subsidiaries during the one-year period preceding the Restricted Period.

56.     The 2014 RSU Agreement and the 2014 PUA Agreement also contains a non-solicitation agreement, which provides:

14

Unless the Participant has received prior written authorization from the Corporation's Chief Executive Officer, the Participant shall not during his or her employment or service with the Corporation and for a period of one year following any termination of such employment or service relationship (the "Restricted Period"):

(i) Directly or indirectly, solicit, recruit, persuade, encourage or otherwise induce to become employed by, become associated with or consult for, any person or entity other than the Corporation, or hire or employ, any individual who is or was employed by the Corporation at any time during the Restricted Period or the one-year period preceding the Restricted Period; or

(ii) Directly or indirectly, solicit or accept business on behalf of a Competitive Business from any Customer with whom the Participant has had, or employees reporting to the Participant have had, personal contact or dealings on behalf of the Corporation during the one-year period preceding the Restricted Period.

57.    For more than 19 years, Chang's primary responsibility to Chubb was to manage a team that would service the major accounts of the Real Estate and Hospitality Division he had serviced and developed throughout his tenure.  Chang also was responsible for training and mentoring Underwriters, Risk Engineers and Claims Personnel in his division.

58.    Chang used the title "Senior Vice President" and then "President" to convey to clients and his colleagues his leadership position in Real Estate and Hospitality Division.

59.    As a result of his responsibilities as Senior Vice President and President, Chang had full access to all of the Confidential Information maintained in the business records of the Real Estate and Hospitality Division.

60.    Also as a result of his responsibilities, Chang hired and/or supervised the hiring of most, if not all, of the senior employees working in the Real Estate and Hospitality Division as of February 9, 2016.

D.    **Chang Solicits His Former Chubb Clients**

61.    From April 10 to April 13, 2016, The Risk Management Society ("RIMS") held its annual conference and exhibition in San Diego, California.  The RIMS meeting is one of the

premier conferences attended by senior members of the risk management industry. Senior members of Chubb's Real Estate and Hospitality Division attended as did Defendant Chang.

62.     At the meeting, Chang took the opportunity to meet with clients and brokers he formerly worked with during his employment with Chubb. The meetings were private, and were not part of the general social activities of the conference. On information and belief, Mr. Chang participated in meetings in the dedicated client meeting spaces of Chubb brokers, including Aon plc, Marsh LLC, and Willis Group.

63.     On information and belief, Chang solicited his former clients to do business with Endurance Holdings and Endurance Reinsurance. This solicitation violated the clear restrictions contained in his non-solicitation agreements with Chubb.

E.     **The Former Chubb Employees**

64.     Prior to February 9, 2016, Defendant Chang worked in Chubb's Real Estate and Hospitality Division with the Former Chubb Employees. The Former Chubb Employees and their respective job titles and various functional titles are as follows:

    a.     Christopher Adolph – Assistant Vice President, Senior Home Office Examiner;

    b.     Bentley Betts – Assistant Vice President, Residential Industry Segment Leader and Senior Underwriting Specialist;

    c.     Laura Corigliano – Underwriting Team Leader and Senior Underwriter II;

    d.     Jason Dockery – Assistant Vice President, West Underwriting Manager and Senior Underwriter II;

    e.     Daryl Dubrovich – Senior Underwriting Specialist and Senior Underwriter I;

    f.     Nilo Enriquez – Vice President, US/Territory Risk Management Manager

    g.     Barbara Frare – Assistant Vice President, Senior Underwriting Specialist;

16

h.   Shaun Gonzales – Underwriting Manager and Senior Underwriter Specialist;

i.   Joseph Pillion –  Vice President, North America Environmental Practice Leader and Marketing Manager;

j.   Ionel Rizea –Vice President, Chief Operating Officer and Business Development; and

k.   Rob Tuohy – Vice President, Associate Counsel;

l.   Glen O'Connor – Senior, P&C Risk Engineer.

65.   The Former Chubb Employees represent many of the most senior employees of the Real Estate and Hospitality Division with titles at the level of Vice President and Assistant Vice President.

66.   The majority of the Former Chubb Employees listed above were parties to RSU Agreements containing confidentiality and non-solicitation agreements identical to those of Defendant Chang.

67.   Each of the Former Chubb Employees assumed responsibilities in the Real Estate and Hospitality Division on a full-time basis.   They maintained their positions and responsibilities for their respective position through the time of their mass resignations on April 22, 2016.  As a result of their responsibilities each of the Former Chubb Employees had full access to Confidential Information maintained in the business records of the Real Estate and Hospitality Division.  Such access, was subject to the policies and procedures promulgated by Chubb, including policies and procedures governing confidentiality and handling of Confidential Information.  Despite their access to the Confidential Information, under Chubb's policies and procedures, they were not authorized to use, disclose or retain Chubb Confidential Information for purposes other than to further Chubb's business objectives.

F.      **Planning The Mass Resignation of Former Chubb Employees from The Real Estate
and Hospitality Division on April 22, 2016**

68.     On information and belief, Defendants had been planning and preparing for the
departures of the Former Chubb Employees for weeks prior to their departures on April 22,
2016.

69.     Although the Former Chubb Employees had numerous conversations with
members of senior management of Chubb during the weeks prior to April 22, 2016, at no time
prior to their sudden departures did they notify Chubb that they were having discussions with
Endurance Holdings and Endurance Services or that they were planning to resign from their
positions at Chubb on the same date.

70.     On information and belief, in preparation for their departures from Chubb, the
Former Chubb Employees were aware that Endurance Holdings and Endurance Services were
recruiting one or more other Chubb employees to leave Chubb together.  They further assisted
each other to engage in a pattern of activity reflecting that they were preparing to leave Chubb
and to take Chubb Confidential Information with them to use in competition for a competitor.
They concealed and attempted to cover up their actions from Chubb. In fact, they took steps to
secrete their communications with Endurance Holdings and Endurance Services and the outside
search firm, including by using private email addresses of themselves or others and by using
private mobile phones.  Mr. Chimera furthered this effort by contacting each of the Former
Chubb Employees on his or her personal email address.

71.     For example, Defendant Betts sent emails to his personal email account with
Chubb's Confidential Information on February 2, 3, 9, 11, 19, March 10, 11, 23, 24, 25, and
April 5, 6, 7, 8, 18, 20, 2016.  And Defendant Chang sent emails to his personal email account
with Chubb's Confidential Information on December 6 and 30, 2015 and January 16, 2016.

72.    On information and belief, the Former Chubb Employees also accessed and saved files from Chubb's internal network containing Chubb's Confidential Information onto personal hard drives or other storage devices in the weeks preceding their resignations.

73.    For instance, Defendant Dubrovich connected an external USB hard drive to her computer on at least 15 days between March 14, 2016 and her resignation on April 22, 2016. During that time frame, at least 104 files were opened from the USB device, many of which were Chubb files containing Confidential Information.

74.    During the same time period, Laura Corigliano accessed or saved files to Google's cloud storage at least 31 times, and Joseph Pillion copied approximately 480 megabytes of data to his personal Microsoft OneDrive account.

75.    On information and belief, at least 11 of the 12 Former Chubb Employees attached USB devices to their Chubb computers during their employment with Chubb.  None of the Former Chubb Employees has returned any USB devices to Chubb since terminating his or her employment.  In addition, at least three of the Former Chubb Employees connected their Chubb computers to cloud based data services, and at least one of the Former Chubb Employees, Christopher Adolph, connected a personal RIM Blackberry device to his Chubb computer.

76.    On information and belief, the emailing of documents containing Chubb's Confidential Information to personal email addresses, and the transfer of such documents onto personal hard drives, other storage devices or cloud services, of several of the Former Chubb Employees was done either for the purpose of preparing client files to be shipped to Endurance following termination of their employment, or for the purpose of their misappropriation and removal of Confidential Information from Chubb's offices.

77.     The emailing of Confidential Information to the personal email accounts, and the transfer of such documents onto personal hard drives or other storage devices, of several of the Former Chubb Employees was not done for valid business purposes on behalf of Chubb, but solely for their own personal benefit and/or for the benefit of Endurance.  The Former Chubb Employees had no valid reason to email confidential business records to personal email accounts or to transfer confidential business records onto personal storage devices, and such actions violated Chubb policy.

78.     Following their resignations from Chubb, the Former Chubb Employees also retained in their possession a large volume of hard copy documents containing Chubb Confidential Information.  In fact, Defendant Dubrovich alone had at her home five boxes worth of documents (15,450 pages) containing Confidential Information, including coverage binders, internal memoranda and correspondence, and client-specific information and data, which were not returned to Chubb until three weeks following Dubrovich's resignation.

79.     The Former Chubb Employees have made no representation that they have returned all hard copy documents in their possession containing Confidential Information to Chubb.  In fact, Defendants have acknowledged that Laura Corigliano, Nilo Enriquez, and Ionel Rizea have not even been instructed to turn over hard copy documents to their counsel, and that the Former Chubb Employees continue to possess electronically stored documents containing Confidential Information.  This failure to return both electronic and hard copy documents to Chubb upon termination of employment violates written acknowledgements signed by the Former Chubb Employees representing that Endurance instructed them not to retain Confidential Information from any prior employer.

80.     Chubb's factual and forensic investigation of the emails, computers, mobile phones, and user activity on the Chubb internal network of the Former Chubb Employees is ongoing, and Chubb reserves the right to amend this complaint to specify additional instances of misappropriation of Chubb Confidential Information.

G.     **Chang's Indirect Solicitation of the Chubb Employees**

81.     On information and belief, at least two Chubb employees contacted Chang following his departure from Chubb on February 9, 2016 regarding whether there existed opportunities to work with Chang in building a real estate and hospitality practice at Endurance.

82.     In one such contact, in or about March 2016, Chang repeatedly advised the Chubb employee of the terms of his non-solicitation agreement with Chubb.   Despite his acknowledgement of his contractual and legal obligations to Chubb, Chang advised the Chubb employee that if he wished to explore employment opportunities with Endurance that he should contact Endurance's Human Resources Department.   He further provided the Chubb employee with the telephone number for Human Resources.   Upon calling that telephone number, the Chubb employee was referred to Tony Chimera, Endurance's Senior Vice President of Human Resources.   On information and belief, Tony Chimera directed the recruitment of the Former Chubb Employees on behalf of Endurance.

83.     In the ensuing weeks, the Chubb employee had multiple conversations with Mr. Chimera.   In those conversations, Mr. Chimera gave the Chubb employee the impression that Mr. Chimera was already familiar with the Chubb employee, although the Employee had not submitted a resume or any other form of employment application.

84.     On information and belief, Mr. Chang had spoken to Mr. Chimera regarding this Chubb Employee's qualifications, having worked with him for a number of years.

85.     On April 20, 2016, Mr. Chimera extended an offer of employment to the Chubb employees, despite not having conducted a face-to-face interview of the Employee.  This offer of employment was extended just days before the mass resignations of the Former Chubb Employees.

86.  On information and belief, Endurance Holdings and Endurance Services contacted other Former Chubb Employees through similar means and with the assistance of Chang.

### H.     **The Scheme to Destroy A Chubb Line of Business**

87.     Through their conduct outlined above, Defendants participated in a scheme to cripple Chubb's Real Estate and Hospitality Division and to take Chubb's Confidential Information.  This conduct constitutes unfair trade practices by Defendants.

88.     No rational or valid business purpose was served by the timing and execution of the plan to hire a significant percentage of the employees of the Real Estate and Hospitality Division other than to maliciously harm Chubb's business relationships and to destroy the business of Chubb's Real Estate and Hospitality Division.

89.     On information and belief, Endurance Services made lucrative compensation offers to the Former Chubb Employees in an apparent effort to lure them away from Chubb. Endurance made it clear that the Former Chubb Employees had to accept these offers within a very short period of time or else the offers would expire.

90.     These offers could not be justified based solely on the desire to attract the Former Chubb Employees solely for their skills and training as insurance Underwriters, Risk Engineers or Claims Professionals.

I.   **Notification To Defendants of the Requirements of Chang's RSU and PUA Agreements**

91.   Chubb, through its counsel, notified the Defendants of the terms of the confidentiality and non-solicitation obligations under Chang's RSU and PUA Agreements by letter dated February 11, 2016, and that Chubb had discovered evidence indicating that he forwarded an email from his work email account to his personal gmail account that included highly confidential proprietary business plans and marketing materials for the Real Estate and Hospitality Division.

92.   At the time Chubb sent this email, it had no knowledge that Defendants were planning to recruit multiple Chubb employees or to cause the mass resignations on April 22, 2016.

93.   Even aside from such formal notification, Defendants knew or should have known that their conduct violated their legal duties to Chubb.

94.   Counsel for Defendant Endurance responded by letter dated March 4, 2016. Counsel did not deny that Chang forwarded confidential information to his gmail.com account, but claimed that this was done "in the ordinary course of business in connection with his work for Chubb, had nothing to do with Endurance and that the documents have not been shared with Endurance." Counsel further stated that "it is Endurance's policy to honor all legitimate legal rights of third parties, including former employers of executives who join Endurance."

95.   With the benefit of hindsight, through its counsel Endurance sought only to lull Chubb into a false sense of complacency while it was planning its raid on Chubb's Real Estate and Hospitality Division.

## COUNT I

### Breach of Contract - Violation of Confidentiality and Non-Solicitation Covenants (against Chang)

96.    The averments of paragraphs 1 through 95 hereof are incorporated herein by reference as if set forth in their entirety.

97.    Chang entered into the RSU and PUA Agreements in which he agreed not to use or disclose Chubb's Confidential Information, not to directly or indirectly solicit, recruit, persuade, encourage or otherwise induce Chubb employees to become employed by or become associated with any person other than Chubb, and not to directly or indirectly solicit or accept business on behalf of Endurance from any customer with whom he or his subordinates at Chubb had personal contact or dealings on behalf of Chubb during the year preceding his resignation.

98.    The restrictions contained in these agreements are reasonably necessary for the protection of Chubb and are reasonably limited in time and scope.

99.    Chang violated the RSU and PUA Agreements, as set forth in detail above, by appropriating, using and/or disclosing Confidential Information for Defendants' own purposes and to the detriment of Chubb, by recruiting, soliciting or aiding in the recruitment and solicitation of the Former Chubb Employees, and by soliciting customers with whom he or his subordinates had dealings during the year prior to his resignation from Chubb.

100.    As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

24

## COUNT II

### Breach of Fiduciary Duty
### (against Chang, Betts and Dubrovich)

101.    The averments of paragraphs 1 through 100 hereof are incorporated herein by reference as if set forth in their entirety.

102.    Chang, Betts and Dubrovich, by virtue their employment as officers of Chubb, owed Chubb a fiduciary duty not to act in a manner inconsistent with the interests of his employer, Chubb.

103.    As set forth above, Chang breached his fiduciary duties to Chubb by participating in a scheme whereby the Former Chubb Employees would resign simultaneously from Chubb and commence working at Endurance, and by soliciting customers with whom he or his subordinates had dealings during the year prior to his resignation from Chubb.

104.    Chang, Betts and Dubrovich also breached their fiduciary duties by forwarding emails including Confidential Information to their personal email accounts and/or placing Confidential Information onto personal hard drives.

105.    The above activities were intended to hinder Chubb's ability to transition client projects to new management, and to facilitate Chang and the Former Chubb Employees in transferring the business of Chubb clients to Endurance.

106.    As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT III

### (against Endurance)
### Aiding and Abetting Breach of Fiduciary Duty

107.    The averments of paragraphs 1 through 106 hereof are incorporated herein by reference as if set forth in their entirety.

108.    Chang knew of the breaches of fiduciary duty in which he and the Former Chubb Employees had engaged.

109.    Chang substantially assisted and/or encouraged such breaches of fiduciary duty by encouraging the Former Chubb Employees to leave Chubb's employ and otherwise to participate in the schemes described above.

110.    Endurance substantially assisted and/or encouraged the breaches of fiduciary duties by Chang and the Former Chubb Employees by encouraging them to leave Chubb, and, on information and belief, by encouraging Chang to solicit customers with whom he or his subordinates had dealings during the year prior to his resignation from Chubb.

111.    By virtue of the foregoing, Defendants aided and abetted the breaches of fiduciary duty by Chang and the Former Chubb Employees.

112.    As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

### Misappropriation And Misuse Of Trade Secrets And Confidential Information
### New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq. ("NJTSA")
### (against all Defendants)

113.    The averments of paragraphs 1 through 112 hereof are incorporated herein by reference as if set forth in their entirety.

26

114. The books, files, and records of Chubb, including, but not limited to data pertaining to Chubb's clients, such as information regarding clients' key contact persons, pricing and discounting preferences and tolerances, insurance policies, insureds, pending projects and proposals, claims experience, sales and marketing strategies, revenues, compensation and personnel information and other non-public, business information are highly confidential.

115. This information derives independent economic value by not being accessible, through proper means, to competitors such as Endurance, which can profit from its use or disclosure. The identities of Chubb's clients, as well as other Confidential Information, such as Chubb's marketing, sales, and other proprietary information are not readily available to the public or to Chubb's competitors. Chubb has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

116. Chubb has taken more than adequate measures under the circumstances to maintain the secrecy of its Confidential Information, including without limitation by requiring employees with access to such information to sign confidentiality agreements, such as the RSU and PUA Agreements signed by Chang and most of the Former Chubb Employees, by promulgating confidentiality policies contained in its Code of Conduct and Global Data Security Policy, and to acknowledge their obligation to keep such information confidential, restricting access to such information on a need-to-know basis, and maintaining the files in a secure building and on computer systems that are password-protected.

117. Additionally, by virtue of their employment by Chubb, Chang, Betts, Dubrovich and the other Former Chubb Employees had a duty not to reveal Confidential Information

obtained during their employment by Chubb or to use such Confidential Information for their own benefit and to the detriment of Chubb.

118.   By virtue of Chubb's development and ownership of its Confidential Information, Chubb is entitled to the exclusive use and enjoyment of this information.

119.   The Confidential Information of Chubb was communicated to Chang, Betts, Dubrovich and the Former Chubb Employees while they were employed in positions of trust and confidence.

120.   By engaging in the conduct described above, Chang, Betts and Dubrovich have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Chubb, and continue and will continue to do so, in violation of a confidential relationship between Chang, Betts and Dubrovich with Chubb.

121.   On information and belief, the Former Chubb Employees inevitably will use or disclose Chubb Confidential Information to Endurance in the performance of their duties to Endurance.

122.   On information and belief, Endurance either accepted such information with the knowledge that it was Confidential Information taken by Chang, Betts and Dubrovich from Chubb in violation of their duty of confidentiality, or Endurance was deliberately indifferent or reckless in failing to prevent Chang, Betts and Dubrovich from using, disclosing or misappropriating Chubb's Confidential Information.   Further, on information and belief, Endurance will similarly accept Confidential Information from the Former Chubb Employees.

123.   As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

**Tortious Interference With Existing and Prospective Contractual and Business Relationships**
**(against all Defendants)**

124.    The averments of paragraphs 1 through 123 hereof are incorporated herein by reference as if set forth in their entirety.

125.    The Defendants, improperly and without privilege or justification, have engaged and, upon information and belief, are continuing to engage in the enticement and solicitation of Chubb's employees, and have unlawfully interfered and intend to continue to interfere with Chubb's existing and prospective contractual and business relationships with its employees.

126.    Defendants have unlawfully induced employees of Chubb to leave Chubb for the purpose of crippling and destroying a line of Chubb's business, or for the purpose of having such employees or former employees breach their employment agreements with Chubb, and/or commit other wrongs, such as disclosing, misappropriating or using trade secrets and/or confidential or proprietary information or knowledge, and by soliciting customers with whom such employees or their subordinates had dealings during the year prior to their resignation from Chubb.

127.    The foregoing conduct was and is willful, intentional and calculated to cause damage to Chubb, and has already caused and will continue to cause serious damage to Chubb with respect to its contractual and business relationships with its employees.

128.    As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI

### Civil Conspiracy
### (against all Defendants)

129.   The averments of paragraph 1 through 128 hereof are incorporated herein by reference as if set forth in their entirety.

130.   By engaging in the conduct described, all Defendants intentionally and willfully entered into an agreement in combination and conspiracy:

  a.   with the intent to misappropriate Chubb's employees, clients and Confidential Information; with the intent to interfere with Chubb's contractual or prospective business relations with its clients and employees; with the intent to unfairly compete with Chubb; and/or with the intent to aid or abet a breach of fiduciary duty owed to Chubb; or

  b.   with the intent to perform various acts to injure Chubb in order to develop and advance the business interests of Defendants and to harm the business interests of Chubb, in violation of state law.

131.   As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT VII

### Unfair Competition
### (against all Defendants)

132.   The averments of paragraphs 1 through 131 hereof are incorporated herein by reference as if the same were set forth in their entirety.

133.   By engaging in the conduct described, Defendants have unlawfully and without privilege engaged in unfair competition with and to the detriment of Chubb.

134.   As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT VIII

### Unjust Enrichment
### (against all Defendants)

135.    The averments of paragraph 1 through 134 hereof are incorporated herein by reference as if set forth in their entirety.

136.    As a result of Defendants' conduct as set forth above, Chubb has suffered a detriment and Defendants have received and appreciated benefits to which they would not otherwise be entitled.

137.    Under the circumstances, the Defendants' acceptance and retention of such benefits without payment of value to Chubb is inequitable.

138.    Therefore, as a result of their conduct as set forth above, Defendants have been unjustly enriched by the receipt and appreciation of benefits resulting from the diversion of confidential information and employees from Chubb to Endurance.

139.    As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

## COUNT IX

### Violation of the Computer Fraud and Abuse Act
### (against all Defendants)

140.    The averments of paragraph 1 through 139 hereof are incorporated herein by reference as if set forth in their entirety.

141.    The actions of Defendants as described above constitute violations of one or more provisions of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

142.    The CFAA provides, in relevant part:

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages

31

and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses  (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.

18 U.S.C. § 1030(g).

143.   The "factor" described in Subsection (c)(4)(A)(i)(I) is a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."   18 U.S.C. § 1030(c)(4)(A)(i)(I).

144.   "Loss" is defined in the CFAA as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

145.   Prior to their resignations, the Former Chubb Employees accessed Chubb's protected computer system to place and store data containing Confidential Information in unapproved applications and services, email Confidential Information to personal email accounts, and store or transport data containing Confidential Information on USB drives or other portable storage media.  Such actions violated Chubb's corporate data security polices and were without authorization or exceeded the Former Chubb's Employees' authorization to Chubb's protected computer system.

146.   Defendants knowingly engaged in a scheme whereby Chang, Betts, Dubrovich and other Former Chubb Employees acting on behalf of Defendants Chang and Endurance, accessed and obtained data and information on Chubb's protected computers without

32

authorization or by exceeding such authorization as may have been granted, all within the meaning of 18 U.S.C. § 1030(a)(2)(C).

147.    As a result of Defendants' conduct, Chubb has sustained damage or loss of not less than $5,000.00, within the meaning of 18 U.S.C. § 1030, and will continue to suffer substantial losses in excess of $5,000, including but not limited to losses sustained in responding to and investigating Defendants' actions, including by conducting a damage assessment.

148.    Chubb has no adequate remedy at law.


## COUNT X

### Violation of the Defend Trade Secrets Act
### (against all Defendants)

149.    The averments of paragraph 1 through 148 hereof are incorporated herein by reference as if set forth in their entirety.

150.    The actions of Defendants as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016 , 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 et seq.

151.    The DTSA provides, in relevant part:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

 18 U.S.C. § 1836(b)(1).

152.    The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable…" 18 U.S.C. § 1836(b)(3)(A).

153.   By engaging in the conduct described above, Chang, Betts and Dubrovich have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Chubb, and continue and will continue to do so, in violation of a confidential relationship between Chang, Betts and Dubrovich with Chubb.

154.   On information and belief, the Former Chubb Employees inevitably will use or disclose Chubb Confidential Information to Endurance in the performance of their duties to Endurance.

155.   On information and belief, Endurance either accepted such information with the knowledge that it was Confidential Information taken by Chang, Betts and Dubrovich from Chubb in violation of their duty of confidentiality, or Endurance was deliberately indifferent or reckless in failing to prevent Chang, Betts and Dubrovich from using, disclosing or misappropriating Chubb's Confidential Information.   Further, on information and belief, Endurance will similarly accept Confidential Information from the Former Chubb Employees.

156.   As a consequence of the foregoing, Chubb has suffered and will continue to suffer irreparable harm and loss.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray that:

1.   an injunction issue, preliminarily until final hearing and permanently thereafter:

   a.   enjoining and restraining Defendants, and any persons or entities acting under their direction, control or in concert therewith from, directly or indirectly, revealing, misappropriating, disclosing and/or requesting anyone to disclose any trade secret or confidential or proprietary information or knowledge of Chubb; from using in any way or aiding or requesting anyone to use any trade secret or confidential or proprietary information or knowledge of Chubb; from retaining the benefits resulting from the use, disclosure or misappropriation of any trade secret or confidential or proprietary information or knowledge of Chubb;

and from breaching or soliciting or aiding anyone to breach any contract with or legal obligation to Chubb;

b.      ordering Defendants to return to Chubb any and all documents, drawings, client or employee information and tangible or intangible records of Chubb in their possession, including all copies and adaptations of such documents, data, information and records;

c.      ordering Defendants and anyone acting in concert or participation with them, including their counsel, and any agent, employee, officer, or representative of Endurance, to return to Chubb's counsel any and all confidential information pertaining to the clients or business operations of Chubb, whether in original, copied, computerized, handwritten, or any other form, and to purge any such information from his possession, custody, or control, within 24 hours of notice to Defendants or their counsel of the terms of an order by the Court; provided, however, that any information in computerized or electronic form (including but not limited to personal computers, computers, Blackberries, iphones, Treos, Palm Pilots, mobile telephones, compact or floppy discs, flash (thumb) drives, and any other device or media in, or on, which data can be electronically stored) shall be provided by Defendants to their counsel within 24 hours of notice to Defendants or their counsel of the terms of an order by the Court, and Defendants' counsel shall preserve the integrity of such data, devices and storage media, and shall immediately (and in no event later than seven calendar days after the entry of an order of the Court) make any and all such data, devices, and media available for inspection, imaging, and duplication by Chubb's counsel and/or Chubb's computer forensic consultants.   After imaging and inspection of the electronic devices by Chubb, any confidential information shall be deleted and/or purged from the devices by Chubb.

d.      ordering Defendants and anyone acting in concert or participation with them, including their counsel, and any agent, employee, officer, or representative of Endurance, to preserve until further order of the Court all documents in any form, including electronic data which shall include, but not be limited to, all text files (including word processing documents), spread sheets, e-mail files and information concerning e-mail (including logs of e-mail history and usage, header information and "deleted" files), internet history files and preferences, graphical image files (including ".JPG, .GIF, .BMP and TIFF" files), data bases, calendar and scheduling information, computer system activity logs, and all file fragments and backup files containing electronic data;

e.      enjoining and restraining Defendants, and any persons or entities acting under their direction, control or in concert therewith, from soliciting, recruiting, persuading, encouraging or inducing, directly or indirectly, any of the employees of Chubb to become employed by or become associated with or consult for any person or entity other than Chubb;

f.    enjoining and restraining Defendants, and any persons or entities acting under their direction, control or in concert therewith, from conspiring to breach or induce the breach of restrictive covenants, to interfere with existing or prospective contractual relations of Chubb, to misappropriate Chubb's clients, employees, trade secrets and confidential and proprietary information, to unfairly compete with Chubb, to aid or abet a breach of fiduciary duty, or to harm the business interests of Chubb;

g.    awarding Chubb such other and further injunctive relief as this Court may deem just and proper;

2.    Plaintiffs be granted an accounting compelling Defendants to account for all profits, compensation, remunerations and/or benefits obtained as a result of engaging in the aforementioned conduct, including but not limited to:

a.    breaching and/or inducing the breach of confidentiality and/or non-solicitation agreements entered into between themselves and Chubb;

b.    breaching and/or aiding, abetting, or inducing the breach of the fiduciary duty owed to Chubb by Chang;

c.    misappropriating, revealing and/or disclosing Chubb's confidential or proprietary information;

d.    intentionally interfering with Chubb's existing or prospective contractual and business relationships;

e.    intentionally and willfully entering into an agreement in combination and conspiracy with the intent to commit various tortious acts or with the intent to perform various acts to injure Chubb in order to develop and advance the business interest of Defendants and to harm the business interests of Chubb; and

f.    unfairly competing with Chubb to its detriment; and

3.    Plaintiffs be awarded damages from the Defendants, jointly and severally, including:

a.    compensatory damages in an amount in excess of $75,000;

b.    punitive and/or exemplary damages on all common law claims and as permitted by statute;

36

        c.       pre-judgment and post-judgment interest in an amount to be determined at trial; and

        d.       the costs and attorney's fees incurred by Chubb in bringing this action;

4.    Plaintiffs be awarded damages for unjust enrichment resulting from the detriment suffered by Plaintiffs and the benefits received and appreciated by Defendants; and

5.    Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

<center>JURY DEMAND</center>

    The Plaintiffs demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court Rules 1:8-2(b) and 4:35-1(a).

Dated:  September 16, 2016

<div style="margin-left: 40%;">

  /s Liza M. Walsh             
WALSH PIZZI O'REILLY FALANGA LLP
Liza M. Walsh
Peter J. Pizzi
Selina M. Ellis
One Riverfront Plaza
1037 Raymond Blvd., 6th Floor
Newark, NJ 07102
Tel: (973) 757-1100
lwalsh@walsh.law
ppizzi@walsh.law
sellis@walsh.law

WEIL, GOTSHAL & MANGES LLP
Jeffrey S. Klein (*admitted pro hac vice*)
Nicholas J. Pappas
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
jeffrey.klein@weil.com
nicholas.pappas@weil.com

</div>

<center>37</center>

Diane P. Sullivan
Allison M. Brown
17 Hulfish Street, Suite 201
Princeton, New Jersey 08542
Tel: (609) 986-1100
diane.sullivan@weil.com
allison.brown@weil.com

*Counsel for Plaintiffs*

<u>Certificate of Service</u>

I hereby certify that on November 28, 2016, a copy of the SECOND AMENDED COMPLAINT was served on counsel for Defendants via electronic mail at the following address:

Steven M. Kayman, Esq.
Proskauer Rose LLP Eleven Times Square
New York, NY 10036
skayman@proskauer.com

Dated: November 28, 2016

/s Liza M. Walsh
Liza M. Walsh

39