**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

———————————————————————  :
                                                         :
CHUBB INA HOLDINGS INC. (f/k/a THE   :
CHUBB CORPORATION) and FEDERAL   :
INSURANCE COMPANY,                             :
                                                         :
                              Plaintiffs,             :         Civil Action No. 16-2354-BRM-DEA
                                                         :
               v.                                        :
                                                         :
MICHAEL CHANG, BENTLEY BETTS,     :
DARYL DUBROVICH, ENDURANCE       :
SERVICES LIMITED, ENDURANCE        :
SPECIALTY HOLDINGS LTD., and         :
ENDURANCE REINSURANCE                 :
CORPORATION OF AMERICA,               :
                                                         :
                              Defendants.            :         **OPINION**
                                                         :
———————————————————————  :

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss Plaintiffs' Second Amended Complaint (the "SAC") filed by Defendants Michael Chang ("Chang"), Bentley Betts ("Betts"), Daryl Dubrovich ("Dubrovich"), Endurance Services Limited ("Endurance Services"), Endurance Specialty Holdings Ltd. ("Endurance Holdings") and Endurance Assurance Corporation f/k/a Endurance Reinsurance Corporation of America ("Endurance Assurance") (collectively, the "Defendants"). (ECF Nos. 116 and 126.) Plaintiffs Chubb INA Holdings Inc. (f/k/a The Chubb Corporation) ("Chubb") and Federal Insurance Company ("FIC") (together, the "Plaintiffs") oppose the motion. (ECF No. 120.) Also before this Court is Plaintiffs' Motion for a Preliminary Injunction. (ECF No. 53.) Defendants oppose the motion. (ECF No. 59.) Pursuant to Fed. R. Civ. P. 78, no oral argument

1

was heard. For the reasons set forth herein, Defendants' Motion to Dismiss is **DENIED** and Plaintiffs' Motion for a Preliminary Injunction is **DENIED.**

I.   BACKGROUND[1]

    A.   FACTUAL BACKGROUND

Chubb competes with Endurance Services, Endurance Holdings, and Endurance Assurance (collectively, "Endurance") in the business of property and casualty insurance. (ECF No. 115 at ¶¶ 25, 39.) Plaintiffs allege Chang, a former Chubb employee, worked with Endurance to enact a scheme to create an instantly successful risk management business by willfully and maliciously targeting and soliciting Chubb's employees for employment at Endurance. (*Id*. at ¶ 1.)

Chang worked at Chubb for more than 19 years in Chubb's Real Estate and Hospitality Division, and is alleged to have indirectly coordinated Endurance's recruitment of many key employees of that division. (ECF No. 115 at ¶ 2.) According to the SAC, in the weeks after February 9, 2016, Chang began indirectly working with other employees of Endurance and/or an outside search firm to coordinate a simultaneous lift out of a block of Chubb employees to create a "turnkey" operation for Endurance. (*Id*. at ¶¶ 2-3.) Fifteen (15) employees in Chubb's Real Estate and Hospitality Division received employment offers from Endurance; all but three (3) employees accepted, and Endurance subsequently hired twelve (12) former employees of Chubb (the "Former Chubb Employees").[2] (*Id*. at ¶¶ 3-4.) In doing so, Chang allegedly violated his post-employment contractual obligations to Chubb. (*Id*. at ¶ 10.)

---

[1] The facts set forth in this Opinion are taken from the SAC (ECF No. 115), the parties' briefs and related filings.

[2] The Former Chubb Employees include, among others, defendants Chang, Betts, and Dubrovich. (ECF No. 115 at ¶¶ 3-4, 13-15.)

The SAC alleges Chang and Endurance identified the Former Chubb Employees through various means, including direct or indirect use of Chubb's confidential information. (ECF No. 115 at ¶¶ 4-5.) Thereafter, Endurance simultaneously delivered to each of the Former Chubb Employees a written offer of employment "greatly in excess of market rates" to pressure them to make a decision in haste, and, ultimately, "caused the Former Chubb Employees to notify Chubb of their resignations on the same day, Friday April 22, 2016" in an effort "to cripple Chubb's business operations in the Real Estate and Hospitality Division." (*Id*. at ¶¶ 5-7.) "Specifically, because of these resignations, Chubb would lose 40% of the senior management of Chub's Real Estate and Hospitality Division in one day" and Endurance allegedly "ensured that their departures were coordinated so as to exact maximum harm to Chubb's relationships" with various accounts serviced by Chubb. (*Id*. at ¶ 7.)

The SAC alleges several Former Chubb Employees – specifically including, but not limited to, Chang, Betts, and Dubrovich – accessed and removed from Chubb's computer systems confidential business records of Chubb "on a massive scale through multiple mediums." (ECF No. 115 at ¶ 8.) Allegedly, "Chubb maintains information regarding its clients which is not publicly available, and cannot be assembled from publicly available information[,] . . . includ[ing] information regarding the client's key contact persons, its pricing and discounting preferences and tolerances, its insurance policies, its insureds, pending projects and proposals, claims experience and handling practices, sales and marketing strategies, revenues, compensation and personal information and other non-public business information (collectively, 'Confidential Information')." (*Id*. at ¶ 41.)

The SAC further alleges that "access to Confidential Information stored on company computers and other devices is strictly limited to Chubb employees who need particular

Confidential Information to perform their job functions. This Confidential Information may be retrieved solely through the use of a coded password assigned to Chubb employees." (ECF No. 115 at ¶44.) "Chubb also maintains paper files containing Confidential Information" and allegedly required its employees "to maintain the confidentiality of such paper files by keeping them in secure file drawers or locked offices accessible only to other employees in the office." (*Id*. at ¶ 45.)

"As a result of their responsibilities each of the Former Chubb Employees had full access to Confidential Information maintained in the business records of the Real Estate and Hospitality Division. Such access was subject to the policies and procedures promulgated by Chubb, including policies and procedures governing confidentiality and handling of Confidential Information." (ECF No. 115 at ¶ 67.)

Plaintiffs allege Chang and other Former Chubb Employees accessed Confidential Information on Chubb's computer system for the purpose of sending such information to their personal email accounts and downloading, transferring, saving, or storing such information on cloud service platforms and portable storage devices. (ECF No. 115 at ¶¶ 47-49, 76, 145.) Allegedly, "[t]hese employees never acknowledged possession of these Chubb confidential materials or sought to return them, in clear contravention of Chubb's express written policies." (*Id*. at ¶ 8.)

The SAC includes allegations about the internal corporate policies allegedly violated by the Former Chubb Employees. (ECF No. 115 at ¶¶ 44-50.) Specifically, the SAC alleges Chubb had a Global Security Data Policy that provided: "Highly Confidential Data and Confidential Data should only be placed in Chubb protected and approved third-party environments backed up by Chubb, and should only be accessible to individuals who have a business need to access it." (*Id*. at

¶ 48.) This policy allegedly prohibits: (1) forwarding of emails containing Confidential Information to personal email accounts; (2) storage of Confidential Information on local computer drives without encryption; (3) posting of Confidential Information on public drives; and (4) storage of Confidential Information on "unapproved applications or services" without permission from Chubb's security officer. (*Id.*) The SAC further alleges the existence of a "written policy" that prohibited the Former Chubb Employees from "stor[ing] or transport[ing] data containing Confidential Information on a CD-Rom, DVD, USB Drive or any other portable storage media without consent and approval from the data owner and information security department." (*Id.* at ¶ 49)

The Former Chubb Employees' access to Chubb's data and systems, specifically including the Confidential Information, was allegedly "subject to" these policies. (ECF No. 115 at ¶¶ 48, 67.) Additionally, "[a]s an added layer of protection, the Chubb Code of Business Conduct requires employees to safeguard Chubb Confidential Information and prohibits employees from using such information for the benefit of anyone other than Chubb." (*Id.* at ¶ 47.) Allegedly, "[a]ll Chubb Employees acknowledge the Code of Business Conduct annually." (*Id.*)

Plaintiffs allege certain Former Chubb Employees, including Betts and Chang, sent themselves emails to their personal email accounts with Chubb's Confidential Information on numerous occasions from December 2015 through April 2016. (ECF No. 115 at ¶ 71.) The Former Chubb Employees are also alleged to have "accessed and saved files from Chubb's internal network containing Chubb's Confidential Information onto personal hard drives or other storage devices in the weeks preceding their resignations." (*Id.* at ¶ 72.) According to Plaintiffs, the "emailing of Confidential Information to the personal email accounts, and the transfer of such documents on to personal hard drives or other storage devices, of several of the Former Chubb

Employees was not done for valid business purposes on behalf of Chubb, but solely for their own personal benefit and/or for the benefit of Endurance." (*Id.* at ¶ 77.)

Generally, these alleged transfers of data all occurred while the Former Chubb Employees were still employed by Chubb. (*See* ECF No. 115 at ¶¶ 71-75.) Plaintiffs additionally allege, however, that the Former Chubb Employees "retained in their possession a large volume of hard copy documents" and "have made no representation that they have returned all hard copy documents in their possession." (*Id.* at ¶¶ 78-79.) Finally, Plaintiffs allege, on information and belief, "the Former Chubb Employees inevitably will use or disclose Chubb Confidential Information to Endurance in the performance of their duties" and Endurance may already have "accepted such information with the knowledge it was Confidential Information taken by [the Former Chubb Employees] in violation of their duty of confidentiality, or Endurance was deliberately indifferent" to its misappropriation by the Former Chubb Employees. (*Id.* at ¶¶ 153-55.)

In short, Plaintiffs allege Chang, aided and abetted by and acting as agent for Endurance, violated his contractual and legal obligations to Chubb, including, among others, not to use or disclose Chubb's confidential information and to refrain from soliciting, recruiting, or taking actions to solicit or recruit Chubb's employees to work for a competitor (*i.e.*, Endurance).

### B.   PROCEDURAL BACKGROUND

On April 26, 2016, Plaintiffs filed a Complaint against defendants Chang, Betts and Endurance Services. (ECF No. 1.) Plaintiffs filed an Amended Complaint on May 3, 2016, pursuant to Fed. R. Civ. P. 15(a)(1). (ECF No. 7.) The Amended Complaint removed an allegation of diversity of citizenship and reflected additional facts purportedly learned during the course of Plaintiffs' ongoing investigation and the limited discovery exchanged between the parties. (*Id.*)

On May 20, 2016, Defendants moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing Plaintiffs failed to state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") and the Court should not retain jurisdiction over the remaining state law claims. (ECF No. 31.)

Plaintiffs opposed Defendants' motion to dismiss (ECF No. 42), and moved for leave to file a Second Amended Complaint (ECF No. 37). Plaintiffs sought to amend their pleading to: (1) assert a new federal claim under the recently-enacted Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.* ("DTSA"); (2) amend certain allegations relating to Plaintiffs' CFAA claim; and (3) add several additional defendants. (ECF Nos. 37-1, 82, and 89.) Defendants opposed Plaintiffs' motion for leave to amend. (ECF Nos. 43, 89.)[3]

Meanwhile, on July 5, 2016, Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 53.) Plaintiffs seek to enjoin "(1) Chang, and all of those in active concert or participation with him, for a period of one year, from directly or indirectly soliciting and/or accepting business on behalf of Endurance or any of its subsidiaries or affiliates from any customer of Chubb or any subsidiary or affiliate of Chubb (the "Chubb Group"), in each case as to whom or as to which Chang, or any Chubb Group employee working under Chang, had personal contact or dealings on

---

[3] In the ensuing months, the Honorable Douglas E. Arpert, U.S.M.J. conducted several conferences with the parties to address issues relating to expedited discovery and in an effort to broker a settlement. In furtherance of that goal, on August 2, 2016, Magistrate Judge Arpert entered an Order terminating without prejudice Defendants' Motion to Dismiss (ECF No. 31), Plaintiffs' Motion for Leave to Amend (ECF No. 37), and Plaintiffs' Motion for a Preliminary Injunction (ECF No. 53) to allow the parties to discuss a potential settlement (ECF No. 67). That Order expressly states that "[n]o additional filings related to any of these Motions shall be made pending reinstatement." (*Id.*) When attempts at settlement proved unsuccessful, on September 12, 2016, Magistrate Judge Arpert issued a Letter Order approving a supplemental briefing schedule and reinstating the parties' various motions. (ECF No. 75.) After this case was reassigned, this Court, with Magistrate Judge Arpert's assistance, held additional settlement conferences on October 7, 2016 and October 26, 2016. Despite these efforts, no settlement was reached and the case proceeded.

behalf of Chubb during the one-year period preceding February 9, 2016; and (2) Endurance, including any of its subsidiaries or affiliates, and all of those in active concert or participation with them, from aiding, assisting, encouraging, inducing, or acting in concert with Chang to directly or indirectly solicit and/or accept business from any "Customer" of the Chubb Group, in each case as to whom or as to which Chang, or any Chubb Group employee working under Michael Chang, had personal contact or dealings on behalf of Chubb during the one-year period preceding February 9, 2016." (ECF No. 53-1 at 2-3.)

Defendants filed written opposition to Plaintiffs' Motion for a Preliminary Injunction, arguing, among other things, Plaintiffs had not met their burden of proof and the Court lacked subject matter jurisdiction to issue an injunction. (ECF No. 59.) After the motion was fully-briefed, and efforts at settlement proved unsuccessful, on September 12, 2016, Magistrate Judge Arpert entered a Letter Order reinstating Plaintiffs' Motion for a Preliminary Injunction, among others. (ECF No. 75.) Pursuant to that Letter Order, the parties' thereafter filed additional briefing and supporting declarations to supplement the record. (*See* ECF Nos. 77, 79, 83, 96, 98.)

On November 21, 2016, this Court issued an Opinion and entered an Order granting Plaintiffs' Motion for Leave to File a Second Amended Complaint and administratively terminating, as moot, Defendants' then-pending Motion to Dismiss.[4] (ECF No. 112.) Plaintiffs filed their SAC on November 28, 2016. (ECF No. 115.) Defendants now move to dismiss the SAC in its entirety. (ECF Nos. 116 and 126.)[5]

---

[4] In its Opinion, the Court also explained its decision to reserve on Plaintiffs' Motion for a Preliminary Injunction "to allow Defendants an opportunity to respond to Plaintiffs' Second Amended Complaint." (ECF No. 112 at 2 n.2.)

[5] Defendants' Motion to Dismiss was fully-briefed on January 11, 2017. (*See* ECF No. 125.) Thereafter, Plaintiffs filed a purported sur-reply, without leave of Court, "to address a significant inaccuracy in Defendants' Reply Memorandum of Law" with respect to Defendants' statement that "the electronic documents were returned to Chubb in native format with metadata, so Chubb

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Defendants move to dismiss the SAC for failure to state a claim, pursuant to Rule 12(b)(6), and on the grounds the Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1). (ECF Nos. 116 and 126.) "Caution is necessary because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1)." *Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

#### i.   Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

can verify that none of the electronic documents was opened or accessed by anyone after May 11, 2016." (ECF No. 127 at 1.) Plaintiffs contend "the present record does not permit Chubb to determine whether such records had been 'opened or accessed' after May 11, 2016." (*Id.*)

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### ii.   Fed. R. Civ. P. 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id.* (citation omitted). Thus, when a factual challenge is made, "no presumptive

truthfulness attaches to [the] plaintiff's allegations . . . ." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

### B.    MOTION FOR PRELIMINARY INJUNCTION, PURSUANT TO FED. R. CIV. P. 65

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "A plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm

in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that

an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter v. Natural*

*Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant bears the burden of showing

that these four factors weigh in favor of granting the injunction, and a failure to establish any one

factor will render a preliminary injunction inappropriate. *Ferring*, 765 F.3d at 210. *See also Am.*

*Tel. & Tel. Co. v. Winback Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (holding

that a party must produce sufficient evidence of all four factors – and requiring a district court to

weigh all four factors – prior to granting injunctive relief).

## III.    DECISION

### A.    DEFENDANTS' MOTION TO DISMISS

Defendants argue the SAC fails to state a claim under the CFAA (Count IX) and the DTSA

(Count X), which are the only federal claims asserted. They further argue the Court should not

retain supplemental jurisdiction over the remaining state law claims and, thus, the SAC should be

dismissed in its entirety.

#### i.    PLAINTIFFS' CFAA CLAIM (COUNT IX)

According to the Defendants, the SAC fails to state a claim for relief under the CFAA in

at least two respects. (Defs.' Mem. (ECF No. 116-1) at 13-14.) First, they argue Plaintiffs cannot

allege any of the Defendants accessed the computer data at issue "without authorization" or by

"exceeding authorized access" because the Former Chubb Employees were authorized to access

all of the data at issue while still employed by Chubb. Second, Defendants argue Chubb has not

alleged a cognizable "loss," as required to state a civil claim. This Court disagrees, and finds

Plaintiffs have alleged sufficient facts in support of their CFAA claim to defeat a motion to dismiss

under Rule 12(b)(1) and/or 12(b)(6).

The CFAA makes it unlawful to "intentionally access[ ] a computer without authorization ... and thereby obtain[ ] ... information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). To maintain a civil action for a CFAA violation, a plaintiff must allege conduct involving one of five enumerated factors. *Id*. § 1030(g). Plaintiffs appear to allege a violation of the first of those factors, which specifies the alleged unlawful computer access must have caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

As the parties acknowledge, there is a circuit split regarding the proper interpretation of these terms. (ECF No. 116-1 at 14-15; Plfs.' Mem. (ECF No. 120) at 21.) The Seventh Circuit has held that when an employee accesses files after breaching the duty of loyalty to his employer, he exceeds his authorized access. *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006). Similarly, the First, Fifth and Eleventh Circuits have held that the boundaries of "authorized access" should "include exceeding the purposes for which access is 'authorized.'" *U.S. v. John*, 597 F.3d 263, 272 (5th Cir. 2010); *U.S. v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 581-84 (1st Cir. 2001). The Second, Fourth and Ninth Circuits, on the other hand, have held that an employee does not exceed authorized access when that employee was entitled to obtain the documents at issue. *U.S. v. Valle*, 807 F.3d 508, 527-28 (2d Cir. 2015); *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (neither term reaches "the improper use of information validly accessed") *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1135 n.7 (9th Cir. 2009). The parties correctly note the Third Circuit has not addressed this issue.

Here, Plaintiffs allege the Former Chubb Employees accessed and obtained Confidential Information from Plaintiffs' computer systems in violation of company policies that limited their

access to such information. (ECF No. 115 at ¶¶ 47-49, 67, 77, 145.) Drawing all inferences in favor

of Plaintiffs, this is more than enough to state a claim that the Former Chubb Employees exceeded

their authorized access under any interpretation of the law, since it is alleged they accessed and

obtained information without authorization. 18 U.S.C. § 1030(e)(6). The SAC also states a claim

that the Former Chubb Employees accessed Plaintiffs' computers "without authorization" because,

"at this stage in the proceedings, any difference between 'without authorization' and 'exceeding

authorized access' is 'paper thin.'" *Spinello Companies v. Silva*, 2014 WL 4896530, at *4 (D.N.J.

Sept. 30, 2014) (quoting *Citrin*, 440 F.3d at 420). The Court finds Plaintiffs have sufficiently

alleged the Former Chubb Employees accessed the computer data at issue "without authorization"

or by "exceeding authorized access" to the data at issue while still employed by Chubb. Moreover,

because the SAC alleges the Former Chubb Employees were performing these actions on behalf

of Endurance, the SAC states a claim against all Defendants.

Defendants also argue that Plaintiffs' CFAA claim fails to allege a cognizable "loss" as

required by the statute. The thrust of Defendants' argument is that, under the CFAA, "the plaintiff

must allege costs relating to an investigation of *damage caused to the computer system or data*

resulting from the defendants' conduct." (ECF No. 116 at 20 (citations omitted, emphasis in

original).) According to Defendants, Plaintiffs' CFAA claim fails because "Chubb has not alleged

that its computers or data sustained any damage as a result of Defendants' alleged conduct" and

the SAC's allegations "that Chubb sustained a 'loss' . . . is wholly conclusory and merely tracks

the statutory language." (*Id*. at 21.) The Court construes Defendants' "loss arguments" as

implicating both Rule 12(b)(6) and 12(b)(1).[6]

---

[6] While the parties have characterized Defendants' argument as a factual challenge to subject matter jurisdiction under Rule 12(b)(1), insofar as they are disputing Plaintiffs' factual allegations, the Court notes that Defendants have neither filed an answer nor "otherwise presented competing

Although the Court does not read the CFAA quite as narrowly as Defendants, even accepting their interpretation, the Court finds Plaintiffs have met their burden. Initially, and as noted above, to state a claim under the CFAA, the alleged unlawful computer access must have caused "a loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Under the CFAA, "the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 2030(e)(11). On its face, then, a "loss" under the CFAA is not limited only to costs "relating to an investigation of damage caused to the computer system or data resulting from the defendants' conduct" as Defendants argue.[7]

The SAC alleges that, because of Defendants' actions, Plaintiffs have had to expend more than $5,000 to respond to the breach, including conducting a damage assessment to determine the extent of the breach and of the damage to Plaintiffs' files and hardware. (*See* ECF No. 115 at ¶ 147.) The Court finds these allegations are sufficient to state a claim under the CFAA.

---

facts" in support of their motion. *See Davis*, 824 F.3d at 346 ("because it submitted a signed declaration disputing Davis's factual allegations, Assurant has mounted a factual challenge to subject matter jurisdiction) (citing *Aichele*, 757 F.3d at 358); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.,* 673 F.2d 700, 711 (3d Cir. 1982) "[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual rather than a facial attack. . . ."). The Court is skeptical of whether Defendants' challenge should be characterized as factual, rather than facial. Nonetheless, as discussed herein, the Court finds Plaintiffs have met their burden under either standard.

[7] The Court recognizes there is authority holding to the contrary. *See, e.g., Winner v. Polistina*, 2007 WL 1652292 (D.N.J. June 4, 2007) (Hillman, J.) (finding "the meaning of loss under the statute must pertain to 'a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted'") (citations omitted). As discussed herein, however, this issue is not dispositive because, even accepting the Defendants' narrow interpretation, Plaintiffs have clearly alleged losses in excess of $5,000 directly relating to their investigation and remedying of potential damages caused by Defendants' conduct.

Insofar as Defendants challenge the underlying factual assertions of Plaintiffs' CFAA claim as a basis for this Court's jurisdiction, the burden shifts to Plaintiffs to prove this Court can exercise jurisdiction and they are permitted to submit information in rebuttal to Defendants' 12(b)(1) motion. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) (stating that "[i]f a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence."). In opposition to Defendants' Motion to Dismiss, Plaintiffs submit the Declaration of J. Christopher Racich[8] (the "Racich Decl.") (ECF No. 120-3.) The Racich Decl. establishes that Chubb has already incurred costs exceeding $50,000.00 associated with forensic analysis and investigation of Defendants' alleged data destruction and transfers. (*Id.* at ¶10 and Ex. 2.) Therefore, Plaintiffs have met their burden of alleging facts that show they can prove they incurred damage or loss under the CFAA and, accordingly, Defendants' Motion to Dismiss Plaintiffs' CFAA claim is **DENIED**.

### ii.    PLAINTIFFS' DTSA CLAIM (COUNT X)

The DTSA provides a civil cause of action to "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).[9] As defined under the DTSA, "the

---

[8] Mr. Racich is the President of Vestigant, LLC, a technology and computer forensic consulting firm that was retained by Plaintiffs' counsel "to perform forensic analysis on computer and phone media used by certain former Chubb Employees . . . to detect any destruction of Chubb data, the movement or copying of Chubb data to removable devices or cloud services, and communications between the custodians and anyone from Endurance Services Ltd." (ECF No. 120-3 at ¶¶ 2-3.)

[9] Under the DTSA, a "trade secret" encompasses "all forms and types of financial, business, scientific, technical, economic or engineering information . . . if . . . the owner thereof has taken reasonable measures to keep such information secret; and . . . the information derives independent economic value" from not being generally known to competitors. 18 U.S.C. § 1839(3). For purposes of this motion, Defendants concede the Confidential Information allegedly misappropriated by the Former Chubb Employees are "trade secrets" under the DTSA. (ECF No.

term 'misappropriation' means: (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[10]; or (B) disclosure or use of a trade secret of another without express or implied consent . . . ." 18 U.S.C. § 1839(5). The DTSA's private cause of action "shall apply with respect to any misappropriation of a trade secret . . . for which any act occurs on or after" May 11, 2016, the DTSA's effective date. 114 Pub. L. No. 153 §2(e), 130 Stat. 376 (2016).

The SAC alleges "Chang, Betts and Dubrovich have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of Chubb, and continue and will continue to do so, in violation of a confidential relationship between Chang, Betts and Dubrovich with Chubb." (ECF No. 115 ¶ 153.) The SAC further alleges, "[o]n information and belief, the Former Chubb Employees inevitably will use or disclose Chubb['s] Confidential Information to Endurance in the performance of their duties to Endurance" and Endurance allegedly accepted such information with knowledge of, or deliberate indifference to, its misappropriation by the Former Chubb Employees (*Id.* at ¶¶ 154-55.)

Defendants argue these allegations are insufficient to state a claim under the DTSA, which requires Plaintiffs to "allege that the defendants improperly acquired, disclosed or used a trade secret on or after May 11, 2016." (ECF No. 116 at 23.) According to Defendants, the Former Chubb Employees' alleged acquisition of Chubb's Confidential Information all occurred prior to

---

116 at 7, n.8); *Cf. IDT Corp. v. Unlimited Recharge, Inc.*, 2012 WL 4050298, at *6 (D.N.J. Sept. 13, 2012) ("New Jersey law has considered customer lists and pricing and marketing techniques to be trade secrets.").

[10] As defined by the DTSA, "the term 'improper means': (A) includes theft bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

the May 11, 2016 effective date of the DTSA and, therefore, Plaintiffs cannot state a claim for violation of the DTSA on an improper acquisition theory. (*Id*. at 24 (citing *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394, at *7 (M.D. Fla. Sept. 27, 2016).) Defendants additionally argue "[t]he allegation that the Former Chubb Employees 'retained' and 'continue to possess' Chubb documents does not satisfy the statute because mere retention of documents is not an improper acquisition, disclosure or use that would satisfy the statutory definition of 'misappropriation.'" (*Id*. at 26 (internal citation omitted).) Rather, Defendants argue the "mere retention of documents obtained in the ordinary course of employment is not an actionable misappropriation" under the DTSA. (*Id*.) Finally, Defendants argue that a purported inevitable disclosure is not actionable as a misappropriation, and the allegations that the Former Chubb Employees "continue and will continue" to misappropriate, reveal and disclose, and Endurance "will similarly accept," Confidential Information are purely conclusory and not supported by any facts that would support an inference that any actionable misappropriation has occurred. (*Id*. at 26-27.) The Court disagrees.

Initially, the Court rejects Defendants' arguments that the SAC fails to allege any improper acquisition, disclosure, or use of Confidential Information by them after May 11, 2016, and that Plaintiffs rely solely on the "inevitable disclosure" doctrine to establish that Defendants used Plaintiffs' trade secrets. In their SAC and submissions on these motions, Plaintiffs set forth factual allegations supporting an inference that Defendants did actually use misappropriated trade secrets. Plaintiffs allege the Former Chubb Employees, in preparation for their departures from Chubb, and to use in competition for a competitor, violated Chubb's company policies by emailing Confidential Information to their personal email addresses and transferring and copying Confidential Information to personal devices without a legitimate business need. (ECF No. 115 at

18

¶¶ 70-77.) Plaintiffs further allege that, subsequent to their resignations and also in violation of Chubb's policies, the Former Chubb Employees retained large volumes of documents containing Confidential Information after May 11, 2016, with the intent to disclose and/or use that information for the benefit of Endurance. (*Id.* at ¶¶ 78-79, 153-55.) Plaintiffs contend the Confidential Information retained by the Former Chubb Employees and/or acquired by Endurance establishes a clear link between that information and subsequent solicitation of Chubb's customers by Defendants. Significantly, in support of that contention, Plaintiffs submitted Declarations offering additional factual allegations leading to the inference that Defendants have either disclosed or used Chubb's Confidential Information to the benefit of Endurance. (*See* Declaration of Steven J. Reiss (ECF No. 120-2) at ¶¶ 5-23 (identifying specific customers Chubb allegedly lost to Endurance after each customer was allegedly solicited by Chang and other Former Chubb Employees); *id.* at ¶ 79 (indicating that data concerning each account appears throughout Defendants' ESI production); Declaration of Peter J. Pizzi (ECF No. 120-1) at ¶7 (same).)

Defendants' argument that no misappropriation occurred because any Confidential Information in the Former Chubb Employees' possession was "obtained in the ordinary course of employment" is based entirely on their own self-serving denials which are insufficient to resolve this issue of fact. *See NVR Inc. v. Davern*, 2015 WL 9450831, at *3 (D.N.J. Dec. 23, 2015) (granting preliminary injunction under New Jersey Trade Secrets Act, despite defendant's contention that he had returned all the trade secrets at issue).[11] The same is true of Defendants'

---

[11] Just as "[s]elf-serving affidavits are insufficient to withstand a motion for summary judgment," *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), they are equally insufficient to support a motion to dismiss. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is 'essentially conclusory' and lacking in specific facts is inadequate to satisfy the movant's burden."); *see also Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.,* 2014 WL 6885987, at *4 n.3 (D.N.J. Dec. 4, 2014) ("A self-serving affidavit from a defendant challenging personal jurisdiction, without any other supporting proof, fails to constitute a proper challenge.")

claims that the Former Chubb Employees returned all Confidential Information that remained in their possession after they resigned from Chubb and before any of them started work at Endurance, and "have not disclosed any [Confidential Information] to Endurance or used or disclosed any such information for Endurance's benefit." (ECF No. 116 at 28 (citing Declaration of Elise A. Yablonski (ECF Nos. 116-2 to 116-8) Ex. C. at ¶ 5).)[12]

In considering all of these allegations in the light most favorable to Plaintiffs, the Court finds Plaintiffs have alleged "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Indeed, Plaintiffs "need not make out specific allegations as to exactly how Defendants used or disclosed Plaintiff[s'] trade secrets; there is no heightened pleading standard for a misappropriation claim, and Plaintiff[s are] entitled to seek discovery to support [their] allegations setting forth a prima facie claim." *Osteotech, Inc. v. Biologic*, 2008 WL 686318, at *5 (D.N.J. Mar. 7, 2008) (denying motion for judgment on the pleadings as to plaintiff's claim for misappropriation of trade secrets under New Jersey law). Therefore, accepting as true Plaintiffs' allegations, the Court holds Plaintiffs' DTSA claim includes sufficient "factual allegations to raise a right to relief

---

(citations omitted); *Washington v. Hovensa LLC*, 652 F.3d 340, 346-47 (3d Cir. 2011) (discussing the appropriate amount of "consideration to be given to an admittedly self-serving affidavit"); *De Cavalcante v. C.I.R.*, 620 F.2d 23, 26-27 (3d Cir. 1980) (holding, when charged with making evidentiary determinations, the district court may find that self-serving affidavits absent evidentiary support are insufficiently probative).

[12] These assertions are not only insufficient to support a motion to dismiss, *see* n.10 *supra*, but cannot be considered by the Court under Rule 12(b)(6) without converting Defendants' motion to dismiss into a motion for summary judgment because Defendants are challenging the merits of Plaintiffs' claim and not the factual allegations underlying the SAC's assertion of jurisdiction. *See Davis*, 824 F.3d at 348-49. When a court decides to convert a motion to dismiss into a motion for summary judgment, it must provide the parties "reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). As only limited discovery has taken place to date, and Plaintiffs have not had the opportunity to fully refute Defendants' contentions, the Court declines to convert Defendants' motion to dismiss to a motion for summary judgment. Of course, if Plaintiffs are unable to sustain their burden of proof as to this claim, Defendants may move for summary judgment at the appropriate time.

above the speculative level" that Defendants did, in fact, use Plaintiffs' trade secrets. *Twombly*, 550 U.S. at 555. Accordingly, Defendants' motion to dismiss Plaintiffs' DTSA claim is **DENIED**.

Having determined Plaintiffs have validly stated claims under the CFAA and DTSA, there is no basis for this Court to decline supplemental jurisdiction over Plaintiffs' remaining state law claims, because they share a common nucleus of operative fact and arise out of the same case or controversy as Plaintiffs' federal claims. 18 U.S.C. § 1367; *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (holding a district court may exercise supplemental jurisdiction where state-law claims share a "common nucleus of operative fact" with the claims that supported the district court's original jurisdiction); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) ("Under section 1367, a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim."). Defendants' Motion to Dismiss is, therefore, **DENIED** in its entirety.

### B.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction "to protect the status quo of its client and broker relationships in which Chubb has invested significant time and taken measures to protect through reasonable and carefully drafted restrictive covenants." (Plfs.' Mem. (ECF No. 54) at 8.)

"A plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter*, 555 U.S. at 20). An injunction may be issued "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Winback*, 42 F.3d at 1427; *see also P.C. Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the

plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *Ferring*, 765 F.3d at 210. A preliminary injunction also should not be issued where material issues of fact are in dispute. *Vita-Pure, Inc. v. Bhatia*, 2015 WL 1496396, at * 3 (D.N.J. Apr. 1, 2015 (denying injunction where factual disputes "preclude a determination that Plaintiffs have established a likelihood of success on the merits"); *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014), *aff'd*, 588 F. App'x 197 (3d Cir. 2014). The Court must, therefore, weigh each of the four factors to determine whether Plaintiffs have, by a clear showing, carried their burden of persuasion. *See Winback*, 42 F.3d at 1427 (requiring a district court to weigh all four factors prior to granting injunctive relief). As discussed below, however, the Court finds Plaintiffs have not carried their "burden of proving a 'clear showing' of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Therefore, the Court limits its discussion to only this factor.

i.      **Whether Plaintiffs Will Suffer Irreparable Harm**

To warrant the issuance of an injunction, "[a] plaintiff has the burden of proving a clear showing of immediate irreparable injury." *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990) (internal quotations omitted). Plaintiffs argue the threat of irreparable harm here is both acute and actual, given that Chang "has been observed on multiple occasions meeting with brokers and/or customers, and that Endurance has already targeted longstanding and significant clients of Chubb's with whom Chang was intimately involved." (ECF No. 54 at 17.) Defendants, on the other hand, argue Plaintiffs have "not proffered any evidence that Mr. Chang or anyone at Endurance has ever said or done anything to harm Chubb's goodwill" and "[t]he mere fact that Mr. Chang and Endurance are engaged in lawful competition with Chubb is not irreparable harm." (Defs.' Opp'n (ECF No. 59) at 23.) Defendants further argue that any alleged breach of

Chang's restrictive covenant is quantifiable and can be remedied by money damages. (*Id*. at 23-24.)

Plaintiffs are correct that, in certain circumstances, "an imminent possibility of disclosure of confidential information is sufficient to support a finding of irreparable harm." *Chemtall US Inc. v. Laflamme*, 2016 WL 885309, at *16 (D.N.J. Mar. 8, 2016) (citing *HR Staffing Consultants, LLC v. Butts*, 627 F. App'x 168, 174 (3d Cir. 2015) ("Butts argues that there was no evidence that he imminently planned to disclose confidential information . . . . Here, Butts left HR Staffing and 'transferred his loyalties to CarePoint, and could be willing to disclose damaging information or, at the very least, allow the information to influence his actions at CarePoint to the detriment of HR Staffing, especially considering his belief that HR Staffing was using him as a pawn in its dispute with CarePoint.") and *Trico Equipment Inc. v. Manor*, 2009 WL 1687391, at *9 (D.N.J. June 15, 2009) ("Manor has contacted his former customers and will continue to do so unless restrained. He (and Skyworks) benefit from the confidential information he learned working for Trico. There is no monetary compensation that can adequately measure their loss.")).

Additionally, Plaintiffs concern is not only that the Former Chubb Employees may share Confidential Information with Endurance, but also that Defendants may use such information in soliciting Chubb's customers. *See Chemtall*, 2016 WL 885309, at *16 (discussing this factor in evaluating whether plaintiff was likely to suffer immediate irreparable harm). Perhaps most importantly, Plaintiffs have offered sufficient factual allegations to demonstrate that their fears are not entirely unreasonable. *Id*. Thus, Plaintiffs have shown more than the mere possibility that Defendants will use the Confidential Information to Plaintiffs' detriment.

That having been said, an alleged violation of a restrictive covenant does not automatically give rise to "immediate irreparable harm to [ ] goodwill and reputation," as Plaintiffs claim. (Plfs.

Mem. at 16-17.) "Although in certain situations a loss of goodwill may be irreparable," it does not rise to the level of irreparable where the alleged harm is a quantifiable loss of business. *ACE American Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 731 (3d Cir. 2009). Indeed, Courts have routinely found, where the breach of a non-solicitation agreement results in the loss of business, the injury is redressable by money damages. *See, e.g., Howmedica Osteonics v. Zimmer Inc.*, 461 F. App'x 192, 197 n.7 (3d Cir. 2012) (striking portion of injunction because plaintiff "can seek damages for business that was 'moved' tortuously or in violation of non-compete agreements"); *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (holding, despite allegations that plaintiff stood to lose customers and, therefore, profits, from violation of restrictive covenant, "the harm flowing therefrom is compensable by money damages").

Although Plaintiffs have made a persuasive showing that Chang breached his non-solicitation agreement, this Court finds any alleged harm to Plaintiffs resulting therefrom can be remedied by money damages.[13] The same is true with respect to Endurance's alleged use of Confidential Information to solicit Chubb's customers. To the extent any of the Defendants have, in fact, improperly solicited Chubb's customers, Chubb's damages will be measured by the loss of business improperly diverted from Chubb to Endurance. Indeed, Plaintiffs should easily be able

---

[13] Plaintiffs' reliance on the agreements' language, providing any violation would "cause [Chubb] irreparable injury for which adequate remedies are not available at law" is neither binding on this Court nor compels a finding of irreparable harm. *See Laidlaw, Inc. v. Student Transp. Of Am., Inc.*, 20 F. Supp. 2d 727, 766 (D.N.J. 1998) (holding "[a] contractual provision simply cannot act as a substitute for a finding by this Court that it would be appropriate to invoke its equitable powers" and "the Court must fully apply the same test for irreparable harm that it would were the [clause] not to exist"); *HR Staffing*, 627 F. App'x at 174 n.8 (holding contractual acknowledgement of irreparable harm "does not bind a court to conclude that irreparable harm is likely"); *Maximum Quality Foods, Inc. v. DiMaria*, 2014 WL 6991967, at *3 (D.N.J. Dec. 10, 2014) (holding "the Court rejects the contention that the parties have established irreparable harm by agreement").

to identify any of its policies that are not renewed, where Endurance thereafter issued the coverage, and Chubb's anticipated profit on any such renewal policies can be readily quantified in money damages.

Because the Court finds Plaintiffs are not likely to suffer immediate irreparable harm in the absence of an injunction, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF Nos. 116 and 126) is **DENIED**, and Plaintiffs' Motion for a Preliminary Injunction (ECF No. 53) is also **DENIED**. An appropriate Order will follow.

Date: February 7, 2017                          */s/ Brian R. Martinotti*_____
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**